NEW YORK—APRIL, 1877. 137

The Merchants' Loan and Trust Co. v. The Bank of the Metropolis.

THE MERCHANTS' LOAN AND TRUST COMPANY, Respondent,
*against* THE BANK OF THE METROPOLIS, Appellant.

(Decided April 2d, 1877.)

In an action against a bank, on its certification of a check in the hands of an innocent holder for value, it is no defense that the check was procured from the maker without value, and by fraud, or that the name inserted by the maker, to designate the payee is fictitious, if the person whom the maker intended should under that name be paid under that name procures the certification, and under that name, and by the aid of that certification, procures the plaintiffs' money.

The statute as to notes made payable to the order of a fictitious person, considered and discussed.

APPEAL from a judgment entered upon a decision of the general term of the Marine Court of the City of New York, affirming a judgment rendered by that court at a trial term.

The trial was by the court, a jury having been waived.

This action was brought by the Merchants' Loan and Trust Company, to recover the amount of a check, certified by the defendant, which amount the plaintiff had paid to the person to whom the check was given, and who had obtained the certification. The real name of this person was Charles F. Stearns, but the makers, Messrs. Steinway & Sons, at the time of making the check, the defendant at the time of certifying it, and the plaintiff at the time of paying it, supposed his name was F. W. Frothingham, which last name was inserted by the maker in the check as the name of the payee. The check was obtained from the makers by the person who called himself Frothingham, by fraud and deceit, but of this defendant was not aware at time of certifying, or plaintiff at time of paying the check. The check when offered for payment was indorsed " F. W. Frothingham."

*G. W. Cotterill*, for appellant.

*Wm. Henry Arnoux* and *Wm. F. McRae*, for respondent.

CHARLES P. DALY, Chief Justice.—One Charles F. Stearns went several times to the place of business of Steinway & Sons, piano manufacturers, of this city, and after pricing and looking at pianos, selected a piano, the price of which was $425. After he had selected it, the salesman brought him to Mr. Steinway, the principal of the establishment, and Stearns offered him a draft, drawn by the National Bank of Commerce, of New London, Connecticut, upon the Marine National Bank, of this city, payable to the order of F. W. Frothingham, for $10, which, when presented to Mr. Steinway, by Stearns, had been fraudulently altered, or, as it is technically termed, "raised," from $10 to $325. Stearns told Mr. Steinway that he was F. W. Frothingham, and that he was a provision dealer, doing business at New London, Connecticut, where the draft was drawn, and Mr. Steinway, believing him to be F. W. Frothingham, to whose order the draft was made payable, and considering the draft good, as it was drawn by one bank upon another, and having no suspicion that it had been altered from $10 to $825, received it in payment for the piano, and gave Stearns his own check upon the bank of the Metropolis (the defendant), for the difference, $400, payable to the order of F. W. Frothingham ; upon which Stearns gave directions in writing for the shipment of the piano, and then went to the Bank of the Metropolis and presented Mr. Steinway's check to the paying teller for payment, which was not then indorsed, and the paying teller told him that he would have to be identified. Stearns said he knew Mr. Steinway personally, and would get him to identify him by indorsement. He then went out, and after being away about 10 minutes, returned saying that he did not like to ask Mr. Steinway to identify him, and asked the teller if he would not pay him, that he was the person, F. W. Frothingham, to whom the check was payable, and the teller said no, that he must be identified personally by Mr. Steinway, or by the indorsement of some one known to him, the teller, and who was responsible. Stearns then asked him to certify the check, which the teller did, and Stearns left with the check. In the meanwhile, Mr. Steinway sent the

draft to the Marine National Bank to ascertain if it was good, and learned from the teller of that bank that it had been altered from $10 to $825, upon which Steinway immediately went to the Bank of the Metropolis to stop the payment of his check, where he arrived very soon after Stearns had left, and learned that the check had been certified. He gave the teller a description of the man to whom he had given his check, and found that it coincided with the person who had presented it at the bank and got it certified.

Stearns then went to Paterson, N. J., and upon the same day, presented the check at the plaintiff's bank ; the check being there indorsed with the name of F. W. Frothingham, and where he was introduced by Mr. Whitlock, who had known Stearns in Boston, but had forgotten his name ; Whitlock being known to the treasurer of the plaintiff's bank, he having been in its employment for years. Being thus introduced, and the check having been certified, the treasurer paid Stearns the amount of it. It appeared by the evidence that the indorsement of the name F. W. Frothingham was in the same handwriting as the written directions given by Stearns to Steinway for the shipment of the piano, warranting the conclusion that Stearns had indorsed that name on the check. Stearns was afterwards arrested and indicted for the felonious alteration of the draft, and pleading guilty, was sentenced to the State prison.

The plaintiff sent Steinway's check to the defendant's bank, and the defendant refusing to pay it, this action was brought.

The court below gave judgment for the plaintiff ; and the general term of the Marine Court, I think, correctly affirmed the judgment. The check was paid to the person to whom Steinway meant it to be paid, whom he believed to be the F. W. Frothingham to whom the draft was made payable. The plaintiffs are innocent parties, who acted in good faith, in paying the amount of the check, which the defendants, by their paying teller, had certified to be good; and which the plaintiffs paid to Stearns, believing him, as Steinway believed him to be, F. W. Frothingham.

If one of two innocent parties must suffer by the act of the third, he who has enabled the third party to do what he did should sustain the loss. (*Lickbarrow* v. *Mason*, 2 Term. Rep. 63; *Rawls* v. *Deshler*, 4 Abb. Ct. App., Dec. 16, 17.)

The defendants were justified in certifying the check, as the signature was genuine, and they had funds of Steinway's in their hands. If they, instead of the plaintiffs, had paid the check when it was presented, they would have been entitled to charge the payment to Steinway, as they would then have paid it to the person to whom Steinway meant it to be be paid, whether his name was F. W. Frothingham or not; and if they, by certifying it, are compelled to pay it to the plaintiffs, who received and discounted it, upon a certificate that the signature was genuine, and that the defendants had funds of the drawer in their hands to meet it; they have the right, in turn, to hold Steinway accountable as the one who should be ultimately responsible for the loss.

It is not strictly the case of a check drawn, payable to a fictitious person, as Steinway believed the person to whom he gave the check to be F. W. Frothingham, and the one to whose order he made it payable. If "F. W. Frothingham" was, as it may have been, a fictitious name, the plaintiffs, as innocent holders of the check, would be entitled to recover. In *Coggill* v. *The American Exchange Bank* (1 N. Y. 117), Judge Bronson, after stating that it is well settled that when a man draws and puts in circulation a bill which is payable to a fictitious person, the holder may recover upon it as a bill payable to bearer, considers the question whether, when the action is against the acceptor of such a bill, it must appear that he knew that the payee was a fictitious person, and declares that he can see no reason for laying down such a rule; that it is enough that the holder has a good title to the bill, so that the acceptor, on paying it, can properly charge the amount against the funds of the drawer in his hands, if there be any; and if there be none, then he may have an action against the drawer for money paid to his use. The statute declares that " notes made payable to the order of a fictitious person shall, if negotiated by the maker, have the same effect

and be of the same validity as against the maker, and all persons having knowledge of the facts, as if payable to bearer." I see nothing in this provision of the statute which is in conflict with the view of the law taken by Judge Bronson. It is simply affirmatory of the law as it previously existed; that such a note should have the same effect as if payable to bearer against all having knowledge of the facts. A remark of Judge Ingraham, in *Maniort* v. *Roberts* (4 E. D. Smith, 85), that "the statute makes the transfer of such a note valid against persons knowing the name to be fictitious, but *in no other case*," might be construed as implying the contrary; although it is but a statement of *that extent* of the statutory enactment. But if, as the defendants construe it, it means that there can be no recovery upon such a note in any other case, then such a remark or opinion was *obiter*, not being necessary to the decision in *Maniort* v. *Roberts*, in which the judgment of the court below was reversed because the evidence was not sufficient to warrant the conclusion that the name of the payee was that of a fictitious person; and the facts of the case show that it was not the intention of the maker to make the note payable to De Bucke, the person from whom he purchased the goods, but to F. Cornelius, the person to whose order he made the note payable; it appearing from the evidence that De Bucke, the person to whom it was delivered, acted as an agent in selling goods for others.

In an earlier case in this court, in which I participated, *The American Exchange Bank* v. *The City Bank*, decided in 1846 (5 Legal Observer, 18), we held that where a check was obtained from the drawee of a draft on a forged indorsement, and the check was made payable to the individual who forged the indorsement, but in a false name, who indorsed the fictitious name upon the check, and passed it away to a third person for value, who presented it to the bank on which the check was drawn, and received the money for it; that he was entitled to hold the money he had received, and that the bank could not recover it back from him.

I think the whole of the defendant's argument is answered

by the simple fact in this case that the check was paid to the person to whom Steinway meant that it should be paid, and whose name he supposed to be F. W. Frothingham,

The judgment of the general term of the Marine Court should therefore be affirmed.

VAN HOESEN and JOSEPH F. DALY, JJ., concurred.

Judgment affirmed.