MONTGOMERY GARAGE COMPANY, A CORPORATION OF NEW JERSEY, RESPONDENT, v. MANUFACTURERS LIABILITY INSURANCE COMPANY, A CORPORATION OF NEW JERSEY, APPELLANT.

Submitted December 8, 1919—Decided March 1, 1920.

1. Where the drawer of a check delivers it, for a consideration which turns out to be fraudulent, to an imposter under the belief that he is the person whose name he has assumed and to whose order the check is made payable, a *bona fide* holder for a valuable consideration paid to the imposter upon his endorsement of the payee's name, is entitled to recover from the drawer, it appearing that the person to whom the check was delivered was the very person whom the drawer intended should endorse it and receive the money, and that the drawer made no inquiry before issuing the check concerning the identity or credit of the named payee who was unknown to the drawer.

2. One who takes a check, complete and regular upon its face, on the same day it was drawn, before it was overdue, without notice of its dishonor, in good faith and for value, and who at the time it was negotiated had no notice of any infirmity in the check or defect in the title of the person negotiating it, is a holder in due course.

3. Plaintiff company, a holder in due course of a check for $1,500, paid or gave in exchange therefor $1,000 in cash, or its admitted equivalent, and also a negotiable certificate of credit for $500 on the purchase price of an automobile, before receiving notice of any infirmity in the check. *Held*, that the liability thus incurred by the plaintiff in issuing the negotiable certificate of credit in full execution of its contract of exchange, is *pro tanto* a good and sufficient consideration for, and payment for, the check; and where the certificate of credit is outstanding and unrevoked and the plaintiff's liability thereon still continues, it is not bound to prove that it has actually paid the amount for which the certificate of credit was issued, in order to recover the full amount of the check from the drawer thereof.

4. A holder of a check in due course, who has paid the full amount agreed to be paid therefor before receiving notice of any infirmity in it or defect in the title of the person negotiating it, may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

On appeal from the Hudson County Circuit Court.

For the appellant, *Randolph Perkins*.

For the respondent, *Frank J. Higgins* and *Harry Lane*.

The opinion of the court was delivered by

TRENCHARD, J. This is an action to recover the amount of a bank-check for $1,500 signed by the defendant, drawn on the Commercial Trust Company of New Jersey, payable to the order of N. K. Turner, and negotiated to the plaintiff.

The agreed facts, so far as material to the questions presented in this court, are as follows: On March 15th, 1918, one Ennis, representing himself to be N. K. Turner, went to the Manufacturers Liability Insurance Company and delivered to it a check for $5,000, which turned out to be bogus, and received from the company its check for $1,500, being the check in question. On the same day that check was endorsed and delivered to the plaintiff by the person representing himself to be N. K. Turner. The check was promptly presented by the plaintiff to the bank for payment, but payment had been stopped over night by the defendant.

It is further agreed that the plaintiff became the holder of the check "before it was overdue, and, at the time it was negotiated to it, the plaintiff had no notice of any infirmity in the check, or of any defect in the title of the person negotiating it," and before receiving any such notice the plaintiff gave or paid to the person who negotiated the check, as consideration therefor, $300 in cash, a check for $200, a check for $500, and a negotiable certificate of credit for $500 on the purchase price of an automobile. These checks given by the plaintiff passed into the hands of *bona fide* holders for value and were paid by the plaintiff. The negotiable certificate of credit for $500 on the purchase price of an automobile was delivered to the person known as N. K. Turner and is still outstanding, and is admitted to be assignable "by the holder without the consent of the plaintiff," and is treated by the plaintiff "as binding on it." It is further admitted that at the time of the above transactions both the plaintiff and the defendant believed that Ennis was N. K. Turner, and that Ennis was the

154    COURT OF ERRORS AND APPEALS.

Mont. Garage Co. v. Manufacturers, &c., Co.    *94 N. J. L.*

person to whom the defendant issued and delivered the check and who was intended by it to be the payee.

On this state of facts, the trial judge, sitting without a jury, found for the plaintiff for the full amount of the check, and the defendant appeals from the consequent judgment.

We are of the opinion that the judgment was right.

We do not rest the plaintiff's right to recover upon section 9 of the Negotiable Instruments act. *Comp. Stat., p.* 3736. The check cannot be said to have been payable to bearer by force of that section declaring that "the instrument is payable to bearer * * * when it is payable to the order of fictitious or non-existing person, and such fact was known to person making it so payable," because it does not appear that such fact was known to the drawer.

But we think that the rule is where, as here, the drawer of a check delivers it, for a consideration which turns out to be fraudulent, to an imposter under the belief that he is the person whose name he has assumed and to whose order the check is made payable, a *bona fide* holder for a valuable consideration paid to the imposter upon his endorsement of the payee's name, is entitled to recover from the drawer, it appearing that the person to whom the check was delivered was the very person whom the drawer intended should endorse it and receive the money, and that the drawer made no inquiry before issuing the check concerning the identity or credit of the named payee, who was unknown to the drawer. *U. S.* v. *National Bank,* 45 *Fed. Rep.* 163; *Meyer* v. *Indiana Bank,* 61 *N. E. Rep.* 596; *Emporia Bank* v. *Shotwell,* 35 *Kan.* 360; *Robertson* v. *Coleman,* 141 *Mass.* 231; *First Bank* v. *American Bank,* 49 *N. Y. App. Div.* 349; *Merchants L. & T. Co.* v. *Bank of Metropolis,* 7 *Daly* 137; *Land Title and Trust Co.* v. *N. W. Bank,* 196 *Pa.* 230; *Metzger* v. *Franklin Bank,* 119 *Ind.* 359.

And see *Meridian Bank* v. *First Bank,* 7 *Ind. App.* 322; *Elliott* v. *Smitherman,* 2 *Dev. & B.* (*N. C.*) 338; *Forbes* v. *Espy,* 21 *Ohio* 474, in which, though the name adopted by the swindler appears to have been really fictitious, the loss is thrown on the drawer for the same reason.

NOVEMBER TERM, 1919. 155

*94 N. J. L.*    Mont. Garage Co. v. Manufacturers, &c., Co.

In the present case the plaintiff has merely carried out the drawer's intent. In other cases of fraudulent impersonation the drawer is sometimes said to have a double intent; first, to make the check payable to the person before him, and secondly, to make it payable to the person whom he believes the stranger to be. But the courts have almost unanimously held that the first is the controlling intent except where the named payee was already known to the drawer, as in *Cundy* v. *Lindsay*, 3 *A. C.* 459, and *Rossi* v. *Nat. Bank*, 71 *Mo. App.* 150, or was more particularly identified in some manner, *e. g.*, by some designation, description or title, as in the case of *Mercantile Nat. Bank* v. *Silverman*, 148 *App. Div.* 1; 132 *N. Y. Supp.* 1017, none of which factors are present in the case at bar. A man's name is the verbal designation by which he is known, but the man's visible presence is a surer means of identification. In the case at bar, if the plaintiff, before cashing the check, had sent for and asked the drawer whether or not the person presenting the check was the person to whom it was intended to be paid, the answer would have been in the affirmative. Of course the drawer was deceived as to the name of the man it was dealing with, but it dealt with and intended to deal with the visible man who stood before it, identified by sight and hearing. Thinking this man's name was N. K. Turner, it drew a check to N. K. Turner's order intending thereby to designate the person standing before it. Clearly, therefore, the plaintiff has simply paid the money to the person to whom the drawer intended it should be paid. Now either the plaintiff or the defendant must suffer the loss. Both were innocent parties, and the loss justly falls upon the defendant, whose mistake in issuing the check facilitated the fraud and primarily made such loss possible. Such was undoubtedly the law prior to the Negotiable Instruments act. By section 23 of that act (*Comp. Stat., p.* 3738) "where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative," except as against a party who "is precluded from setting up the forgery or want of authority." If we assume that the endorsement in the present case was

156    COURT OF ERRORS AND APPEALS.

Mont. Garage Co. v. Manufacturers, &c., Co.    94 N. J. L.

a forgery or without authority, within the meaning of that section, still in the light of the cases herein referred to, the drawer "is precluded from setting up the forgery for want of authority," and so the signature is not inoperative as to him and the law remains unchanged.

We think there is no merit in the contention of the defendant that the judge erred in rendering judgment for $1,500, the full amount of the check.

This contention is based upon the notion that "the plaintiff had parted with $1,000, and no more." But that notion, as we shall presently show, is not well founded either in law or in fact. That the plaintiff was a holder in due course is clear, it appearing that the check was complete and regular upon its face, that the plaintiff took it the same day it was drawn, before it was overdue, without notice of its dishonor, in good faith and for value, and that at the time it was negotiated the plaintiff had no notice of any infirmity in the check or defect in the title of the person negotiating it. Negotiable Instruments act, *Comp. Stat.*, p. 3741, §§ 52, 53. Now we have pointed out that, besides the $1,000 in cash, or its admitted equivalent, the plaintiff also gave in exchange for the check a negotiable certificate of credit for $500 on the purchase price of an automobile. The liability thus incurred by the plaintiff company in issuing the negotiable certificate of credit, in full execution of its contract of exchange, is *pro tanto* a good and sufficient consideration for, and payment for, the check; and where, as here, the certificate of credit is outstanding and unrevoked, and the plaintiff's liability thereon still continues, it is not bound to prove that it has actually paid the amount for which the certificate of credit was issued, in order to recover the full amount of the check from the drawer thereof. *Duncan* v. *Gilbert*, 29 *N. J. L.* 521; *Miller* v. *Marks,* 46 *Utah* 257; *Matlock* v. *Scheuerman,* 51 *Ore.* 49.

The plaintiff being a holder of the check in due course, and having paid the full amount agreed to be paid therefor before receiving notice of any infirmity in it or defect in the title of the person negotiating it, "may enforce payment of

the instrument for the full amount thereof against all parties liable thereon." Negotiable Instruments act, *Comp. Stat., p.* 3741, §§ 54, 57.

The judgment will be affirmed, with costs.

*For reversal*—None.