THE FIRST NATIONAL BANK IN HOUSTON V. DAVID WHITAKER.

No. 7587. Decided February 12, 1941.
(147 S. W., 2d Series, 1074.)

*Edward S. Boyles, V. Lee McMahon* and *Williard L. Russell,* all of Houston, for plaintiff in error.

When plaintiff has paid the draft and accepted the deed to land he has obtained all he contracted for, even though the bank had paid the proceeds to an utter stranger to the transaction for the bank was the agent of the grantor of the deed to accept payment of the draft and to deliver the deed and the bank would be accountable to its principal, the drawer and grantor, for the proceeds of the collection, but not to plaintiff, the drawee. Commerce Milling & Grain Co. v. Morris, 65 S. W. 1118; Vogel v. Ball, 69 Texas 704, 7 S. W. 101; Heffron v. Pollard, 73 Texas 96, 11 S. W. 165.

*Robt. L. Sonfield,* of Houston, for defendant in error.

The drawer of the check being a fictitious person unknown to the plaintiff, who actually believed him to be a real person, it was the duty of the bank and its vice-president, before authorizing payment of the check, and before paying it to ascertain the existence and identity of the payee, and failing to do so should have refused payment, and the bank having chosen to rely for the identity of the payee of the check upon the introduction of one H. T. Wick, the bank acted at its peril and must sustain whatever loss may ensue. Guaranty State Bank v. Lively, 108 Texas 393, 194 S. W. 937; Armstrong v. National Bank, 46 O. St., 512, 22 N. E. 866, 6 L. R. A. 625, 15 Am. St. Rep., 655.

MR. PRESIDING JUDGE HARVEY delivered the opinion of the Commission of Appeals, Section A.

This suit was brought by David Whitaker, as plaintiff, against the First National Bank in Houston, as defendant, to recover damages in the sum of $2550.00, with legal interest,

alleged to have been sustained by Whitaker on account of, and as a proximate result of, the negligence of the bank in delivering to one F. N. Pattee a certain cashier's check for $2550.00, and in paying the amount of said check to Pattee. The case came on for trial. A jury was impaneled, but after all the testimony had been introduced, the jury was discharged from further consideration of the case, and the court thereupon rendered judgment against Whitaker. The latter appealed and the Court of Civil Appeals reversed the trial court's judgment and rendered judgment for Whitaker. 125 S. W. (2d) 1066. The facts shown in testimony are substantially as follows:

One W. E. Coffey was the owner of a certain tract of land situated in Wharton County, Texas. On May 26, 1936, a man named F. N. Pattee and a man named H. T. Wick concocted a scheme to perpetrate a swindle. On the date named they prepared a deed which, according to its terms, purported the conveyance of said tract of land. Coffey was named as the grantor in the deed, and "Marvin G. Ellis," a fictitious person, was named as grantee in the deed. At the same time, the said conspirators prepared another deed which purported the conveyance of said tract of land by Marvin G. Ellis, as grantor, to H. T. Wick. On the same day, both Pattee and Wick went before a notary public, in San Antonio, and Pattee forged the signature of Coffey to the first deed and, posing as Coffey, acknowledged same before the notary. They then went before a different notary public, and Pattee signed the deed which purported the conveyance of the tract of land by Marvin G. Ellis to Wick. Pattee in signing this deed did not use his real name but used the name "Marvin G. Ellis," and the notary took and certified to his acknowledgment of the deed. Pattee and Wick then caused the Coffey deed to be put of record in Wharton County. Thereafter, on May 29, 1936, they went to the First National Bank in Houston and there Pattee drew a draft against Wick for $2550. The draft reads as follows:

"First National Bank in Houston.

Houston, Texas, May 29, 1936.

At 10 days after date pay to the order of Marvin G. Ellis $2550.00, Twentyfive Hundred and Fifty & No/100 Dollars, with exchange, value received and charge same to account of

Marvin G. Ellis."

H. T. Wick    )

    Houston.  )

Pattee attached to the draft the deed to Wick which is described above. The draft, with said instrument attached to it,

was, by Pattee, acting under the name "Marvin G. Ellis" which he had assumed, placed in hands of the bank for collection. At the same time he told the collection teller that his postoffice address was "116 Taylor Street, San Antonio, Texas," and instructed said official to deliver the attached deed upon payment of the draft, and to remit the proceeds to him (giving his name "as Marvin G. Ellis") at the above address. A few days after this, Wick got in touch with Whitaker and opened negotiations with him looking to the sale of said tract of land to him. Wick submitted to Whitaker a duly certified abstract of title to the land ,which contained a copy of the Coffey deed which Pattee had forged and placed of record. Wick told Whitaker that a man named Marvin G. Ellis was the owner of the tract of land, but the latter had executed a deed to him (Wick) for the land for the agreed consideration of $2550, and had drawn a draft for said sum, and had placed same (with the deed attached) in the First National Bank in Houston for collection. Whitaker's attorney examined the abstract of title, and also examined the deed attached to the draft in the bank, and said attorney pronounced the title good. Thereupon Whitaker agreed to buy the tract of land for $3575.00, and, he, Whitaker, procured a cashier's check from the South Texas Commercial National Bank of Houston, for the sum of $3575.00, and he and Wick went to the First National Bank and a transaction occurred in which Wick, Whitaker and H. H. Burghard, the collection teller of said bank, participated. In reference to this transaction, Whitaker testified as follows:

"On or about June 5, 1936, I went to the First National Bank in Houston. I went there for the purpose of paying a draft in the amount of $2550.00, which was signed by Marvin G. Ellis, and it had a deed attached to it. I went to the bank and talked to H. H. Burghard, the teller at the window, who had the draft and deed. I told him that there was a draft left with him, signed by Marvin G. Ellis in the amount of $2550.00, to which there was a deed attached; that I was buying the land and wanted to pay the draft, and get the deed. H. T. Wick was with me at the time. I was buying the land from Wick. I handed Burghard a cashier's check of the South Texas Commercial National Bank of Houston, in the amount of $3575.00, payable to the First National Bank in Houston, which he accepted. At the time I delivered said check to Burghard, I told him I wanted two checks made out—one to Marvin G. Ellis in the amount of $2550, and the other to H. T. Wick in the amount of $1025.00; that the amount to be paid to Wick represented his profit in

the transaction. Burghard took the cashier's check in the amount of $3575 and made out two cashier's checks— one check was made payable to Marvin G. Ellis, in the amount of $2550.00. The other check was made payable to H. T. Wick, and was in the amount of $1025, less approximately $2.55 that the bank charged. I believe the total amount of the check payable to Wick was $1022.45. The check payable to H. T. Wick was delivered to him in my presence. He spoke up and told Burghard that he would take the check payable to Marvin G. Ellis and deliver it to him, but I stopped him right there, and told Burghard that I did not want the check due Marvin G. Ellis delivered to Wick or any other person than Marvin G. Ellis; that he was the man who was entitled to the money and I wanted him alone to get it. Burghard was instructed by me to pay the check only to Marvin G. Ellis. * * * I did that for my own protection, because I knew that if it was delivered like that I would be protected. I did not know any of the parties to this transaction, and I just wanted to play safe. * * * Burghard said that he would deliver the check to Marvin G. Ellis as instructed. * * * Burghard, right at the first, showed me the draft and the deed attached to it. The draft was in the amount of $2550. * * When I delivered the cashier's check of the South Texas Commercial National Bank to Burghard, he stamped the draft paid and delivered it to me, together with the deed that was attached to it. * * * At the same time, I had in my possession a deed dated June 5, 1936, executed by H. T. Wick, conveying me the same property described in the deed from Marvin G. Ellis to H. T. Wick. * * * At the time I told Burghard to deliver the cashier's check for $2550 to Marvin G. Ellis only, and to no other person, he had before him a receipt dated May 29, 1936, and on the back of this receipt was written the address of Marvin G. Ellis in San Antonio and it was 116 Taylor Street. Burghard turned over the receipt and showed me the address, and stated that 'Marvin G. Ellis told me to mail the check to him at this address, and that is what I'll do.' During all these transactions I never met Marvin G. Ellis. I did not know any man by the name of F. N. Pattee. I did not know that Marvin G. Ellis was a fictitious person. I didn't know anything about him. * * * It was my intention that the money that I gave the bank in payment of the draft was to be paid to the man who left the draft, with the deed attached, for collection by the bank, and who owned the land."

A short time after the above transaction between Wick, Whitaker and Burghard occurred, but on the same day that

same occurred, Wick and Pattee returned to said Bank while Burghard was out at lunch. Another teller was at the collection window. Pattee called for the cashier's check for $2550, and same was delivered to him. He and Wick then went to a cafe near by, where Will Cochran, vice-president of said bank, was taking lunch. Wick introduced Pattee to Cochran as "Marvin G. Ellis." Cochran marked the check "Identified" and signed his name to the notation. Thereupon Pattee, accompanied by Wick, returned to the bank and cashed the check. It is for the payment of this check to Pattee that this suit for damages is brought against the bank.

Where a draft is placed in the hands of a bank for collection, and the instrument attached to it for delivery, or the draft itself, is forged or is invalid for some other reason unknown to the bank, no liability is incurred by the bank by collecting the draft and transmitting the proceeds to the customer. This general rule finds abundant support in reason and in the authorities,—and the instant case is governed by it. Counsel for Whitaker insists, however, that the rule has no application to this case for the reason that "Marvin G. Ellis" was a fictitious person, and the payment to Pattee of the cashier's check for $2550.00—the proceeds of the draft—was wrongful. The case of Guaranty State Bank v. Lively, 108 Texas 393, 194 S. W. 937, is relied on as supporting this contention. In that case it is held that "a check which is made payable to a fictitious person without the knowledge of the maker is not payable to bearer, and it is the duty of the bank before paying it to ascertain the existence and identity of the payee, and failing to do so, to refuse payment." Obviously this holding does not fit the present case for the reason, among others, that no fictitious person was involved in the transaction of collecting the draft and paying over the proceeds to Pattee. Pattee, a real person, acting under the assumed name "Marvin G. Ellis," placed the draft in the bank for collection. He was the person who drew the draft and to whom the same was payable. He was the person who signed the deed which was attached to the draft. In each instance he employed for the occasion the assumed name: "Marvin G. Ellis." The bank, being ignorant of the fact that this was not his real name, was justified in issuing the cashier's check to him under that name, and in paying the check. The bank was under no duty to Whitaker, or to anybody else, to make any inquiry as to whether or not the real name of its customer was "Marvin G. Ellis." The testimony of Whitaker himself shows conclusively that he, too, believed that "Marvin G. Ellis" was the name of the person to

whom the cashier's check, representing the proceeds of the draft, was to be delivered and paid.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court February 12, 1941.