## UNITED STATES v. CONTINENTAL-AMERICAN BANK & TRUST CO. et al.

### No. 12684.

United States Court of Appeals
Fifth Circuit.

June 16, 1949.

HUTCHESON, Circuit Judge, dissenting.

Malcolm E. Lafargue, U. S. Atty., and Wm. J. Fleniken, Asst. U. S. Atty., Shreveport, La., and Paul A. Sweeney, Atty., Dept. of Justice, Washington, D. C., for appellant.

Charles D. Egan and Clarence L. Yancey, Shreveport, La., for appellee.

Before HUTCHESON, SIBLEY, and McCORD, Circuit Judges.

PER CURIAM.

The decision of this court in this case, Continental-American Bank et al. v. United States, 5 Cir., 161 F.2d 935, is adhered to as the law of the case. Appellant still insists it is contrary to United States v. National Exchange Bank, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184; and Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838; and National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383.

The facts found are that a woman rightly named Bertha Smith, using the name of Beulah Mitchell Gibbs, who was the widow of Ben Gibbs, Jr., a deceased soldier, and pretending to be that person, by applications and affidavits presented to in correspondence with the Veterans' Administration, secured from the Veterans' Administration allowances to her as widow, in pursuance of which the series of checks in controversy were issued and delivered to her. The finding is that, "After the issuance of the checks Bertha Smith, the identical person to whom the checks were issued and by whom the drawer (believing her to be Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr.) expected them to be cashed, endorsed them with a signature purporting to be the true and genuine signature of Beulah Mitchell Gibbs, the unremarried widow of Ben Gibbs, Jr., * * * and the bank knowing that the person present was the one physical person the Government desired to be paid and assuming her to be Beulah

Mitchell Gibbs, * * * cashed the same * * * *." The defendant Banks on their own indorsement collected them from the United States at the Federal Reserve Bank. The Banks' indorsement read, "Prior Indorsements Guaranteed." The Supreme Court in the National Metropolitan Bank case, supra, 323 U.S., page 456, 65 S.Ct. page 355, 89 L.Ed. 383, referring to the Clearfield Trust Co. case said: "There we held that presentation of a government check to it for payment with an express guaranty of prior indorsements amounts to a warranty that the signature of the payee was not forged but genuine. Breach of that warranty, we said, by presenting a check on which the payee's signature is a forgery, gives the government a right to recover from the guarantor when payment is made." The real question here is whether these signatures are forgeries, or mere steps in a fraud. If the checks had been applied for by the true widow and had been issued to her and had come into the hands of Bertha Smith who was not the individual intended to be the payee, the indorsements would be forgeries. But here they were intended to go, as they did, to this very flesh and blood person as payee, though that intention was procured by fraudulent misrepresentation as to her name and status. The checks were delivered to her and intended for her, and though they were voidable for fraud, she was the payee. It is the province of the Veterans' Administration to identify persons claiming veterans' allowances, and to pass on the validity of their claims, and cause checks to be delivered to them. The banks do not have the burden of correcting a mistake made or detecting a fraud committed. If the banks see that the very person to whom a check was issued and delivered has indorsed it in the form required, the indorsement is a genuine one, although the name used is a wrong one. They guarantee that the person to whom the check was issued has indorsed it, but not that the check was honestly procured from the drawer. Such is the so-called "impostor rule." 7 Am Jur., Banks, § 599.

■ █ In United States v. National Exchange Bank, 214 U.S. 302, 29 S.Ct. 665, 53 L.Ed. 1006, 16 Ann.Cas. 1184, pension checks were issued on forged warrants to the persons named in the warrants and were sent to them, but one Munson got hold of the checks, forged the names of the several payees, and cashed them. He had not passed himself off as a person entitled to a pension and had not been found entitled to a check. He was not an impostor, but a common forger. The court did not refer to the "impostor rule."

In Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, a government check was sent by mail to a person the government truly owed. It was never received by the person to whom it was sent, but another person got it and indorsed the payee's name without authority and it was collected through a bank under a guaranty of indorsements. This also was no case of imposture, but a simple case of forgery.

In National Metropolitan Bank v. United States, 323 U.S. 454, 65 S.Ct. 354, 89 L.Ed. 383, a clerk in a paymaster's office falsely procured from the disbursing officer checks payable to living officers. He did not deliver them to the payees as it was his duty to do, but forged their names and cashed them. He had never presented himself as the person entitled and persuaded the drawer of the checks that he was entitled to be paid. He was not an impostor, but a forger.

In neither of these cases did the court consider the "impostor rule". We have held it is applicable to government checks. To hold otherwise would tend to destroy negotiability and force the payee to present the check at a Federal Reserve Bank only, and there prove not only that the check was issued to him but also that he was the very person the government owed.

Judgment affirmed.

HUTCHESON, Circuit Judge (dissenting).

While I have no quarrel with my brothers for adhering to their former opinion as the law of the case, I do have a little one with them for having, in the former opinion, declared the law that way.

Whatever may be said for the wisdom, the justice, and the authority of the "im-

postor rule," as applied in varying situations to private parties, and especially to the case where the drawer is an individual and personally delivers the paper to the impostor, I am of the opinion that neither the principle of the rule, nor the authorities relied upon for it, are controlling here. It is correctly laid down in the former opinion that, as to commercial paper issued by the United States, not local but federal law governs controversies arising with respect to it, and I am of the opinion that the Supreme Court cases on which the government relies require a contrary rule to that espoused by the majority.

Being of that opinion, I will not further labor the point here other than to say that I find no basis in the record for the finding of the trial court, the majority opinion quotes, that the United States, the drawer, expected the checks to be cashed by Bertha Smith or endorsed by anyone other than the named payee, Beulah Mitchell Gibbs; none for the argument that though the bank endorsed the paper "prior endorsements guaranteed", it should be relieved from the effect of that endorsement as that effect is declared in Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838.

In stating, "It is the province of the Veterans' Administration to identify persons claiming veterans' allowances, and to pass on the validity of their claims, and cause checks to be delivered to them. The banks do not have the burden of correcting a mistake made or detecting a fraud committed," the majority is so far right. When, however, it goes on to say that a bank, without knowing that the one who presents a government check for payment is the person named in the check, can guarantee that he is, without incurring any liability if he is not, is to state a proposition which, in my opinion, carries its own refutation on its face. It is true that "the banks do not have the burden of correcting a mistake made or detecting a fraud committed" if they do not assume it. It is not true, though, that they can voluntarily assume this burden, by guaranteeing as genuine the signature of a person who presents himself as the payee named in the instrument, and then escape the consequences of that guarantee.

There is some reason in the "impostor rule" when it is applied to a transaction in which the drawer deals personally with the impostor and with the bank, and thus furnishes the identification on which the bank relies. It is a far cry, though, from this situation to the one we have here. Here the government, dealing through agents and by mail over great distances and issuing countless checks to named, but not otherwise identified, payees, *in no way undertakes to identify the payee to the bank, in no way misleads the bank into paying it,* and guaranteeing the endorsement of the payee.

I feel that the public policy in favor of holding to their contract banks who take paper and guarantee prior endorsements in situations of this kind far outweighs the supposed, but in reality non-existent, equities here invoked in the bank's favor, and so feeling, I respectfully dissent from a rule which allows a bank to make its own bed and then refuse to lie in it.