**FIRST STATE BANK OF WICHITA FALLS, Petitioner,**

**v.**

**OAK CLIFF SAVINGS & LOAN ASSOCIA-TION, Respondent.**

No. A–10273.

Supreme Court of Texas.

Feb. 10, 1965.

Rehearing Denied March 17, 1965.

American Bank & Trust Company for the sum of $6,337.67. The American Bank was awarded a recovery over against First National Bank in Dallas, which likewise recovered from First State Bank of Wichita Falls. The bank last named was also awarded a recovery over against Perry T. Grisham and Fredda B. Grisham. The actual parties at interest in this litigation are Oak Cliff Savings & Loan Association and First State Bank of Wichita Falls. The Court of Civil Appeals affirmed. 379 S.W. 2d 952.

In essence, the petitioner, First State Bank of Wichita contends that the judgments below should be reversed (1) because the negligence of the respondent, Oak Cliff Savings & Loan Association, occasioned or contributed to the payment of the proceeds of a check to Fredda Grisham (this was asserted defensively and by action over against Oak Cliff), and (2) because Fredda Grisham occupied the position of an "impostor in law" with reference to Oak Cliff, the drawer of the check, and hence the loss should be borne by the savings and loan association and not by the Wichita Falls bank, which paid out the money to the so-called impostor.

In our opinion these contentions cannot be sustained and accordingly we affirm the judgments of the courts below.

### The Facts Disclosed by the Summary Judgment Evidence

This cause resulted from a swindle perpetrated by Mrs. Perry T. (Fredda) Grisham, who, in some way, learned that there was a sum of money on deposit at the Oak Cliff Savings & Loan Association at Dallas to the credit of Flora Grisham, Independant Executrix of the Estate of I. T. Grisham. Fredda Grisham was a resident of Wichita Falls, Texas, where Mrs. Flora Grisham also resided. On May 31, 1961 Fredda Grisham appeared at the First State Bank of Wichita Falls and represented that she was Flora Grisham; that she wished to withdraw such money as she might have

Malone, Seay & Gwinn, Dallas, for petitioner.

Coke & Coke, Jere D. Turner with firm, Dallas, Bailey & Williams, Lawrence R. Maxwell, Jr., with firm, Dallas, for respondent.

NORVELL, Justice.

Upon proper motions, the trial court rendered summary judgment in favor of Oak Cliff Savings & Loan Association against

on deposit with the Oak Cliff Savings & Loan Association and deposit the same with said First State Bank of Wichita Falls. She stated that she did not remember the exact amount on deposit with the savings and loan association; so a draft was prepared directed to Oak Cliff in favor of the Wichita Falls bank. This draft was signed by Fredda Grisham as "Flora Grisham, Independent Executrix of the Estate of I. T. Grisham" and no certain sum was set forth therein. The word "balance" appears on the face of the draft and the collection letter stated, "Draft on you by Flora Grisham, Independent Executrix of the Estate of I. T. Grisham. Please remit through First National Bank in Dallas—Balance."

It is not the practice of savings and loan associations to honor drafts as such and, accordingly, this draft was not paid. The savings and loan association, however, prepared a check dated June 2, 1961 drawn on the American Bank & Trust Company payable to "Flora Grisham, Independent Executrix of the Estate of I. T. Grisham" for $5,669.05, the amount of the Grisham account. This check was forwarded to the First National Bank in Dallas with a request that the check be not released until the pass book of the savings account had been obtained so that it could be forwarded to Oak Cliff.

After a number of telephone calls from the First National Bank in Dallas, Mrs. Beatrice Martin, an officer in charge of accounts for Oak Cliff, received a call from J. R. Cummings, an officer of the Wichita Falls bank. As to this telephone conversation, Mrs. Martin stated in her deposition that Mr. Cummings "identified himself as an officer of the (Wichita Falls) bank and said that we (Oak Cliff) were working a hardship on our customer by demanding that the pass book be surrendered for it seemed that the pass book had been lost and could not be surrendered. * * * I told him our standard practice was to require the pass book. He indicated that they knew the customer, that a real estate trans-

action was involved, and that they needed their funds desperately. * * * Upon the word of an officer of the bank, I told him we would release the check. * * * I called Mrs. Walton at the (First National) bank and told her we would release the check. * * *"

Had Mrs. Martin's version of this conversation been incorrect or untrue Mr. Cummings could have easily corrected or contradicted it. In his affidavit Cummings simply stated that after making inquiries of the First National Bank in Dallas he "contacted Beatrice Martin, Vice President of the Oak Cliff Savings & Loan Association, regarding the pass book and at that time she waived the presenting of the pass book and did not require us (the Wichita Falls bank) to obtain affidavit of lost pass book and she notified First National Bank in Dallas to release Oak Cliff Savings & Loan Association check to us in payment of the draft, which we had sent for collection." The check was accordingly released to the Wichita Falls bank and delivered by it to Fredda Grisham, who endorsed it as "Flora Grisham, Independent Executrix of the Estate of I. T. Grisham." The proceeds thereof at the request of Fredda Grisham were deposited in the Wichita Falls bank to the credit of the account of "Mr. and Mrs. Perry Grisham." Seemingly, this circumstance did not arouse the suspicions of the officers of the Wichita bank. These funds were later withdrawn from the account and presumedly dissipated by Fredda Grisham and her husband.

Mrs. Flora Grisham is the widow of I. T. Grisham, deceased, who had opened the account with Oak Cliff. In the spring of 1962 she requested payment of the money in the account of "Flora Grisham, Independent Executrix of the Estate of I. T. Grisham." The fraud of Fredda Grisham was then discovered. Oak Cliff paid Mrs. Flora Grisham and brought suit against American Bank & Trust Company for an unauthorized payment out of its funds on deposit with said bank. American asked for a recovery

against First National upon its endorsement of the check of June 2, 1961, and that bank requested similar relief against the Wichita Falls bank. The Wichita Falls bank pleaded over against Oak Cliff, contending that the unwarranted payment of the proceeds of the check to Fredda Grisham was occasioned by the acts and omissions of Oak Cliff.

### The Asserted Negligence of Oak Cliff

It is conceded by the parties that under a contract of deposit, a bank obligates itself to pay funds to such persons or entities as the depositor may direct and to no others; that a depository bank which pays out money upon a forged endorsement may not legally charge the amount so paid out to the depositor's account in the absence of unusual conditions, and that ordinarily the bank paying out funds upon a forged endorsement must stand the loss.

The Wichita Falls bank paid out the funds in the case now before us and now contends that the American bank (Oak Cliff depository bank) had a good defense against the demand of Oak Cliff for the return of the money paid out on the forged endorsement which it (the Wichita Falls bank) is entitled to assert in this suit. Seemingly, it is also asserted that there are special circumstances existing between Oak Cliff and the Wichita Falls bank which would render it unfair or inequitable for the bank to be charged with the loss occasioned by Fredda Grisham's fraudulent conduct. This position is stated by Mr. Cummings, the Wichita Falls bank official, in his affidavit as follows:

"Had we been placed on notice of any kind by Oak Cliff Savings & Loan Association that the purported signature of Flora Grisham, their own depositor, was not the true signature of Flora Grisham, the subject money would not have been delivered to Mrs. Perry Grisham, we would not have guaranteed her endorsement and we would have re-

quired additional verification of such signature before clearing such check."

The Wichita Falls bank attempts to raise some species of estoppel which would prevent the enforcement of the general rule that the loss falls upon the party who pays out money upon a forged endorsement. In our opinion the position of the Wichita Falls bank cannot be sustained either upon the premise that such bank stood in the shoes of the Oak Cliff depository bank (American) or upon the theory that Oak Cliff misled the Wichita Falls bank and thus caused them to cash the check and deliver the proceeds to a forger. The check drawn by Oak Cliff was an order to pay "Flora Grisham, Independent Executrix of the Estate of I. T. Grisham" the sum of $5,669.05, and unless such sum was paid to the named payee, it could not lawfully be charged against the Oak Cliff account. This legal situation is not modified nor the liability of the Wichita Falls bank avoided because Oak Cliff, at the time American paid the check, had no signature card in its files signed by Flora Grisham or the circumstance that it held in its files a letter signed by the genuine Flora Grisham, as well as the purported draft signed by the spurious Flora Grisham. It is not customary for banks to make inquiry of depositor's files before ascertaining the identity of persons presenting checks for payment as payees. If inquiry as to identity had been made, we might have a different situation, but a depositor is not required to volunteer information nor to anticipate that its depository will pay out funds upon forgeries. We agree with respondent that petitioner's arguments might have some application to the duty owed to one investing or depositing money with Oak Cliff, but the lack of a signature card in Oak Cliff's files does not lessen the duty which the American bank (and hence the Wichita Falls bank) owed to Oak Cliff. The facts of Liberty State Bank v. Guardian Savings & Loan Association, 127 Tex. 311, 94 S.W.2d 133 (1936) go far beyond the facts of this case in that there an estoppel was sought to be urged

upon a failure to promptly notify the bank that money had been paid out upon a forged endorsement, which delay allegedly operated to prejudice the bank's attempts to recover such money. It was not a case in which an estoppel was sought to be raised because of some action taken by a depositor in causing payment to be made upon a forgery. However, a forged endorsement was involved and a depositor's duty with reference thereto was discussed. This Court said:

"A bank paid the check of its depositor upon a forged indorsement of the payee. The jury found the depositor negligent in not sooner discovering the forgery. The Court of Civil Appeals held that the depositor owed no duty to examine the indorsement, and could not therefore be charged with negligence for failure to do so. There was no question but that the depositor promptly notified the bank upon learning that the indorsement was forged. In rendering judgment for the depositor, the court merely reannounced and followed a rule of general acceptation, stated in 3 R.C.L. p. 535, § 165, in this language: 'The duty imposed upon the depositor to examine his pass book and vouchers does not extend to an examination of the signatures of the payees on the returned vouchers, as it is the duty of the bank to determine the genuineness of a payee's indorsement, and the depositor is not expected to know his signature, and the fact that an agent in the employ of the depositor has forged the payee's indorsement does not affect the rule.'

"In addition to the authorities cited in the opinion of the Court of Civil Appeals, we cite the following: 6 Tex.Jur. p. 308, § 159; 7 C.J. p. 608, § 415; Texas Bank & Trust Co. of Sweetwater v. Withers (Tex.Civ.App.) 60 S.W.(2d) 1061; case notes in 15 A.L.R. 166, and 28 A.L.R. 1437."

Liberty Mutual Ins. Co. v. First National Bank in Dallas, 151 Tex. 12, 245 S.W.2d 237 (1952) presented a state of facts which in some respects are similar to those disclosed by the present record. It was held that the circumstance that an employee of Liberty Mutual Insurance Company had issued a number of fraudulent checks payable to fictitious payees did not excuse the bank in paying out the insurance company's funds on faked endorsements. Liberty State Bank v. Guardian Savings & Loan Association was said to set at rest the duty of a depositor to examine the endorsement upon checks written by it.

### The Theory that Fredda Grisham was an "Impostor in Law"

Perhaps a more serious problem is presented by the contention that the "impostor" doctrine has application to this case. The term "impostor" or "impostor at law" in the law of negotiable instruments is a phrase of art and its selection as a technical term may not have been a happy one. It was stated in United States v. Bank of America National Trust & Savings Association, 9 Cir., 274 F.2d 366, 81 A.L.R.2d 1358 (1959) that, "In a certain sense, all forgers are impostors and, similarly, impostors in connection with commercial paper in a broad sense are usually forgers." Usually a forger is an impostor (in the popular sense) insofar as the paying bank is concerned as he represents that he is the payee designated in the bill or check he presents. However, an "impostor in law" must be one who imposes upon the maker of the check or bill. The rationale of the "impostor" rule is simple of statement. It is that one who makes a mistake must bear the loss occasioned thereby. If the maker of a check believes that A is B (to whom he owes an obligation) and draws an order with the expectation that A shall receive the proceeds thereof, such maker is liable for his own mistake. However, if the maker draws a check payable to B and A represents to a paying bank that he is B and thus receives the proceeds of the check, A is not an impostor in relation to

the maker and the paying bank may not charge the amount of money paid out against the maker of the check. The mistake was that of the paying bank. The impostor rule is not always easy of application however. See dissenting opinions in United States v. Continental-American Bank & Trust Co., 5 Cir., 175 F.2d 271 (1949) and Atlantic National Bank of Jacksonville v. United States, 5 Cir., 250 F.2d 114 (1957) and A.L.R. Annotations following the report of United States v. Bank of America National Trust & Savings Association, supra, 81 A.L.R.2d 1358. There is danger of confusing names of persons with persons. The impostor rule gives effect to an intention to pay a particular flesh and blood person regardless of name.

In the Atlantic National Bank case, cited above, Judge John R. Brown, writing for the majority, described the case then before the Court of Appeals as being the "classic case of an impostor." This description seems correct as to most cases where the impostor doctrine is invoked and there is no actual face to face confrontation between the maker and the impostor. Generally, as was the case in *Atlantic National*, we find rather widespread swindling operations involved, such as the assertion of fictitious claims and the issuance of checks to fictitious persons in purported settlement thereof. See Annotation, 81 A.L.R.2d 1365.[1] However, the impostor rule is not stated in the terms of multiple operations, although it seems that a multiplicity of actions or maneuvers may be relied upon to establish a belief or intention on the part of the maker

of a check to pay the person regarded as an impostor.

■ The rule is generally stated as including three elements, namely, (a) a fraudulent representation by a swindler to the drawer of the check that he is the intended payee, (that is, the swindler must be an impostor insofar as the drawer or maker is concerned), (b) a belief by the drawer that the swindler is the person he pretends to be, and (c) a conscious and intentional delivery of the check to the swindler by the drawer, induced by the belief that the swindler is the person he pretends to be. Montgomery Garage Company v. Manufacturers' Liability & Insurance Company, 94 N.J.L. 152, 109 A. 296, 22 A.L.R. 1224; Annotation, 81 A. L.R.2d 1365.

■ Undoubtedly in this case the Wichita Falls bank was deceived by the representations made to it by Fredda Grisham. This circumstance, however, as a practical matter, presents an almost insurmountable burden to the acceptance of its contention that Oak Cliff should bear the loss occasioned by the swindler. The Wichita Falls bank, believing that Fredda Grisham was Flora Grisham, prepared the draft which was sent to Oak Cliff. Mr. Cummings, the Wichita Falls bank official, believing that he was dealing with Flora Grisham, called Oak Cliff and held the telephone conversation which resulted in a waiver of presentation of the pass book relating to the Flora Grisham account. Every circumstance that could be urged in support of the hypothesis.

---

1. Petitioner relies upon Red Ball Motor Freight, Inc. v. Bailey, Tex.Civ.App., 332 S.W.2d 411, wr. ref. n.r.e. (1960). This case involves a series of swindles which an employee perpetrated upon the Red Ball Motor Freight Lines, Inc. However, the most distinguishing feature between the cited case and present one is the circumstance that a check was not involved in Red Ball. Here there is no dispute that the American bank (whose position petitioner says it is entitled to occupy) was the depository bank of Oak Cliff and that the instrument drawn by *Oak Cliff* against the American bank in

favor of Flora Grisham was a check. The written instruments involved in Red Ball were described as claim drafts in which Red Ball, according to the Court of Civil Appeals, was both a drawer and a drawee. In stating the question to be decided in the case, the Court of Civil Appeals said, "If the instruments are checks and the depository banks are drawees unquestionably the case of Liberty Mut. Ins. Co. v. First Nat. Bank in Dallas, 151 Tex. 12, 245 S.W.2d 237, is applicable and the depository banks are liable to Red Ball on the 161 instruments involved."

that Oak Cliff intended to pay the flesh and blood person who stood in Wichita Falls bank and whom no official or employee of Oak Cliff had ever seen, (so far as this record shows) is based upon some action taken by the Wichita Falls bank. The only written communication between Fredda Grisham and Oak Cliff, if such it can be called, was the draft which, while prepared by the Wichita Falls bank, was actually signed by Fredda Grisham. If the issuance of the check on the American bank was intended as an acquiescence to the request contained in the draft it was conclusively shown that Oak Cliff did not intend to pay the person who signed the draft unless the pass book was first delivered. This evidenced a clear intention to pay the owner of the account. If liability be shifted to Oak Cliff it must be predicated upon its waiver of the requirement that the pass book be delivered. Yet this action was taken as a result of a telephone conversation with the Wichita Falls bank. Mrs. Martin's uncontradicted version of this transaction indicates that she decided to waive the pass book requirement because of what was said to her by the officer of the Wichita Falls bank and her assumption that such bank would (as it did) guarantee the validity of the Flora Grisham, independent executrix, endorsement. The conclusion is inescapable that while Fredda Grisham was an impostor as to the Wichita Falls bank, she did not bear that relationship to Oak Cliff.

*Conclusion*

■ The evidence adduced here by deposition and affidavit would have compelled the giving of an instructed verdict for Oak Cliff if presented in the conventional or usual form of trial. The summary judgment was proper. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952); Zamora v.

Thompson, Tex.Civ.App., 250 S.W.2d 626, wr. ref. (1952); McDonald, Texas Civil Practice § 17.26.5.

CALVERT, C. J., and GREENHILL, J., dissenting.

POPE, J., not sitting.

GREENHILL, Justice (dissenting).

An impostor is one who, "by assuming a character or identity not his own, fraudulently induces the drawer . . . of a check to draw . . . a check to him in his assumed identity and to deliver the check to him believing him to be the person he pretends to be and the payee . . . of the check." Annot., 81 A.L.R.2d 1365, 1367 (1962).[1]

A forger is a person who "without fraudulent representations to the drawer of a check that he is the intended payee of the check, comes into possession, by interception, theft, or the like, of a check in which a third person is named payee and obtains payment thereof by counterfeiting the payee's indorsement." 81 A.L.R.2d at 1367.

As stated in the annotation, the distinguishing features between an impostor case and a forger case are:

"(1) either by face-to-face dealings or by correspondence the impostor fraudulently induces the drawer of the check to believe that he is the intended payee . . . whereas the forger does not make such representations to the drawer, (2) the drawer consciously and intentionally delivers the check to the impostor personally or through an intermediary, believing the impostor to be the payee . . . whereas the drawer does not consciously or intentionally deliver the check to the forger, and (3)

1. In the interest of brevity, this dissent will not contain a detailed analysis of the cases, but will discuss the general rules and direct attention to the excellent A. L.R. annotation. See Employers Casualty Co. v. Nat'l Bank of Commerce, 140 Tex. 113, 166 S.W.2d 691 (1942); First Nat'l Bank v. Whitaker, 136 Tex. 117, 147 S.W.2d 1074 (1941); Gen.Am.Life Ins. Co. v. Nat'l Bank of Commerce, 348 S.W.2d 393 (Tex.Civ.App.1961, n.r.e.).

the impostor case involves a dual imposture—first to the drawer . . . who delivers the check or draft to the impostor, and then to the impostor's indorsee, whereas the forger case involves only a single imposture—to the forger's indorsee." 81 A.L.R.2d at 1368.

Section 3–405 of the Uniform Commercial Code of 1958 states the rule more simply: "(1) An indorsement by any person in the name of a named payee is effective if (a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee . . . ." Almost two-thirds of the states have enacted the Code, and it has been placed on the State Bar's present legislative agenda by the Board of Directors of the State Bar of Texas. See 27 Texas Bar Journal 943 (Dec. 1964). This Section 3–405, above quoted, is in House Bill 9 and in Senate Bill 141 now before the Legislature.

As I understand this rule as applicable here, it says that "An indorsement by any person [Fredda] in the name of a named payee [Flora] is effective [to hold the drawer, Oak Cliff] if (a) an impostor [Fredda] by use of mails or otherwise [mails and telephone here], has induced the maker or drawer [Oak Cliff] to issue the instrument to him [Fredda] or his confederate in the name of the payee [Flora] . . . ." In my opinion, this is what happened, and the impostor rule is applicable. Inasmuch as the Uniform Commercial Code has been adopted by a great majority of the states and has been recommended for adoption in this state by our Bar, it would seem appropriate to me for this Court to follow the rule set out in the Code. It apparently has worked well in the other states.

The facts appear to me that Fredda did cause Oak Cliff to issue the check. She initiated and signed the draft herself which started the transaction. Fredda (not the Wichita Falls bank) was the impostor, though Fredda was able to get the Wichita

Falls bank to do some of her work for her by subsequent telephone calls *on her behalf*. The Wichita Falls bank was acting for her in attempting to get Oak Cliff to release the money and to issue the check. The transaction was certainly not an independent venture of the Wichita Falls bank. The fact that the Wichita Falls bank may have been negligent (which has not yet been proved) does not keep this from being an impostor case. Whether that bank should be required to bear the responsibility by virtue of its participation or its own negligent acts does not determine the applicability of the impostor rule. That is another matter. In this regard, the case has been decided, without a determination of the facts, upon summary judgment.

It is recognized that for most of us, this is an unfamiliar and remote concept of the law. I repeat the facts one more time, as I see them, in order to attempt to make clear the applicability of the impostor rule to them:

Fredda Grisham signed a draft, using Flora Grisham's name, which directed Oak Cliff to pay the balance of the account to the Wichita Falls bank. Just as if it had been face-to-face, by letter, or by phone, this was a representation by Fredda Grisham to Oak Cliff that she was Flora Grisham. Fredda was an impostor. Oak Cliff did not honor the draft as such but prepared a check payable to "Flora Grisham, Independent Executrix of Estate of I. T. Grisham." Oak Cliff was thus induced to draw that check because it believed that the impostor was Flora Grisham. As one court put it, Oak Cliff did not know Fredda was not Flora. Uriola v. Twin Falls Bank & Trust Co., 37 Idaho 332, 215 P. 1080 (1923). The check was forwarded to a Dallas bank with instructions not to release it until the passbook was obtained. This amounted to a conscious and intentional delivery of the check to the impostor through an intermediary. See Gen. Am. Life Ins. Co. v. Nat'l Bank of Commerce, supra; 81 A.L.R.2d at 1381–83, 1388. The delivery was completed.

when Oak Cliff believed or accepted Fredda Grisham's representation, as related by the Wichita Falls bank, that the passbook was lost. Upon indorsement of the check and receipt of the proceeds, she and the case came within the impostor rule announced in the A.L.R. annotation and the Uniform Commercial Code.

There are a few cases in which, although the facts fit the requirements of the impostor rule, courts have held that the one who cashes or pays the check [the Wichita Falls bank] must bear the loss. See cases cited 81 A.L.R.2d at 1392–95. The rationale of these cases is that the drawer [Oak Cliff] was not negligent, but the drawee or person who cashed the check [the Wichita Falls bank] was negligent to such an extent that the drawer should be relieved of liability. In the case at bar, allegations of negligence are made by each party against the other. In its reply to Oak Cliff's request for admissions, the Wichita Falls bank denied that its officer, J. R. Cummings, represented to Oak Cliff that the passbook had been lost, and, claiming to know the facts, induced Oak Cliff to waive the demand that such passbook be surrendered. If negligence is a factor, then Oak Cliff has the burden of proving that the Wichita Falls bank owed it some duty which was breached, and that this conduct was the proximate cause of the loss.

I dissent on the basis that this is an impostor case and should be treated as such. Once that has been decided (and the majority opinion declines to do so), then the decision would have to be made as to whether (1) the impostor rule would simply be applied as a rule of negotiability, and Oak Cliff could not recover, or (2) whether, even assuming the impostor rule, the cause should be remanded for a trial on the facts with regard to negligence of the Wichita Falls bank, and perhaps the Oak Cliff bank, under the cases discussed just above. This latter course appears to be a minority view, but from the standpoint of justice it has a good deal to recommend it. The Court would have to choose between a fixed and

simple rule of negotiable instruments in aid of dispatch of business and commerce, or attempt to do justice in the individual case. Since the Court does not reach the problem, it is unnecessary to express any opinion thereon.

CALVERT, C. J., joins in this dissent.