in the absence of any claim or proof of a defect in it, was clearly error, and the judgment must be reversed.

Judgment of the Municipal Court reversed, and new trial ordered; costs to abide the event. All concur.

---

MERCANTILE NAT. BANK OF CITY OF NEW YORK v. SILVERMAN.

(Supreme Court, Appellate Division, First Department.   December 29, 1911.)

BANKS AND BANKING (§ 148*)—CHECKS—PAYMENT TO IMPOSTOR.

    Defendant, a private banker of New York, received a letter which purported to come from M., an army officer, who was at a hotel in Washington, and which requested defendant to discount his pay vouchers for the coming three months together with those of another officer S., who had agreed to transfer his vouchers to M.   Defendant ascertained that there were such officers, and that they were regularly stationed as stated in the letter, and wrote M. that he would discount the vouchers, and sent the letter to the Washington hotel.   Thereafter he received the vouchers and sent checks for the amounts, one drawn to the order of M. in his official capacity, and another to the order of S. in his official capacity.   The checks were sent to the Washington hotel each in an envelope addressed to the recipient in his official capacity.   The checks were collected through a Washington bank which guaranteed the indorsements.   The person receiving and signing the checks proved to be an impostor.   *Held*, that defendant intended to make the officer described in each check the payee, and not the person receiving the checks, and did not determine, nor did reasonable care require him to determine, that his correspondent was M., so that his account could not be charged with the amount of the checks paid by the bank on the indorsement of the impostor.

    [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–452; Dec. Dig. § 148.*]

    Scott and Miller. JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Mercantile National Bank of New York against Louis Silverman. Judgment for plaintiff, and defendant appeals. Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

David J. Gallert (Walter S. Heilborn, on the brief), for appellant. Joseph M. Hartfield, for respondent.

LAUGHLIN, J.   This is an action on a promissory note, upon which the defendant admitted his liability, but pleaded facts on which he demanded that the amount of two checks paid by the plaintiff and charged to his account be set off. This defense was overruled. The liability of defendant excepting as to the amount for which he claims an offset has been adjusted and the single question remaining in the action and presented by the appeal is whether the defendant was entitled to have the amount of the checks deducted from his liability on the note.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

The appellant was a private banker, conducting business in the city of New York, and for a long time he had been accustomed to purchase claims of officers of the United States army for their salaries to grow due in the future, and to take assignments of their vouchers therefor. He had a drawing account with the plaintiff, and the checks which were charged to his account and the amount of which he seeks to offset herein were drawn and dated on the 16th day of September, 1907. One was for $900, payable to the order of "Lieut. Col. Frederick Marsh," and the other was for $526.50, payable to the order of "Capt. J. A. Shipton." The Marsh check was indorsed, "Frederick Marsh Lieut. Col. C. A. C.," meaning Coast Artillery Corps, and was deposited for collection and collected through the American National Bank of Washington, D. C., which by indorsement made it payable to the order of the Fourth National Bank of New York, and expressly guaranteed prior indorsements, and it was paid through the New York Clearing House. The Shipton check was indorsed, "Capt. J. A. Shipton," with "Frederick Marsh" underneath it, and it was likewise deposited for collection with the American National Bank of Washington, D. C., and similarly indorsed by it and paid through the New York Clearing House. There were officers in the United States army bearing the names and titles of the payees of these checks, but the checks were neither received nor indorsed by them, but by an impostor. The impostor called on and represented himself to the assistant cashier of the American National Bank of Washington, D. C., as Lieut. Col. Marsh, and exhibited some envelopes addressed to him by that title at the New Willard Hotel, Washington, D. C., but he was not known to any of the officers of the bank, and no further identification was received or demanded. He presented the checks to the assistant cashier, and stated that he wanted to leave them for collection, and did not wish to draw the money until after they were collected. He signed a blank signature identification card for opening an account, in the presence of the assistant cashier, and filled out a deposit slip describing these checks as if they were to be deposited to his credit, but they were not so deposited until collected. The indorsement, "Frederick Marsh," on the checks, was in the same handwriting as the signature on the identification card, and the impostor also wrote Shipton's title and name as indorser on the check payable to Capt. Shipton. At the request of the impostor, the assistant cashier advanced $25 on his own responsibility before the checks were collected, and, after collection, the total amount, less the collection charges, was paid over to the impostor; but not all at one time.

The appellant was not personally acquainted with either Lieut. Col. Marsh or Capt. Shipton, and had had no business transactions with either of them; but in due course of mail he received a letter under date of September 11, 1907, written on the stationery of the New Willard Hotel at Washington, D. C., purporting to be signed by "Frederick Marsh, Lieut. Col. Coast Artillery Corps," and stating, in substance, that the writer observed by an advertisement in the Army and Navy Register that appellant discounted monthly pay vouchers for army officers, and stating his monthly salary; that he desired to have

appellant cash his vouchers for October, November, and December of that year; that his station was the Presidio, San Francisco, Cal., but that for the remainder of the year he was to be on duty in the office of the chief of artillery at Washington; that "Captain James A. Shipton, Coast Artillery Corps," who was likewise on duty in the office of the chief of artillery, was indebted to him and had agreed to transfer his pay vouchers for the same months, and stating his monthly salary, and, in effect, that he also wished to have those cashed, and requesting that a reply be sent in care of said hotel. The appellant the next day by letter addressed "Col. Frederick Marsh, The New Willard, Washington, D. C.," answered the letter stating that, on the receipt of the pay accounts of Marsh and Shipton for the months in question, he would remit by check the amount thereof less the discount stated, which he was to deduct for his charges. Under date of September, 14, 1907, appellant received a letter, signed the same as the first, inclosing vouchers on the forms in use by the pay department of the United States government for the pay or salaries of such officers, purporting to be the pay vouchers of those officers for said months and to be certified by them, with an assignment thereof transferring the amount to the appellant, likewise purporting to be signed by them. It is stipulated that all the signatures were written by the impostor. Under the same date, appellant received a letter also written by the impostor, either inclosed with the other letter and vouchers or in a separate envelope signed "James A. Shipton, Captain C. A. C.," requesting him to send check for the amount of his vouchers, less the discount, to Col. Marsh, and stating that, if appellant preferred, he might consolidate this amount with the proceeds of Col. Marsh's vouchers. There is no evidence that there was any similarity in the handwriting of the various documents or signatures, which was discoverable by ordinary inspection, and no claim is based thereon. On the receipt of these letters and vouchers, appellant inclosed the checks, either in one envelope addressed to Marsh by his official title, or in separate envelopes, the one payable to the order of Marsh addressed to him, and the other addressed to Shipton by his official title, at the New Willard Hotel at Washington, D. C., but as to which the testimony of the appellant is uncertain. The appellant knew, by an examination of the Army and Navy Register before answering the first letter, that there were such officers, and where they were regularly stationed, which corresponded in that regard with the information contained in the letter; but he made no inquiry to ascertain whether or not they were then at the New Willard Hotel or in Washington, or to ascertain whether or not the writer of the letter was Lieut. Col. Marsh.

The primary question to be considered is whether Lieut. Col. Marsh and Capt. Shipton of the United States army were the respective payees of the checks, or whether the appellant intended to make the individual with whom he had the correspondence the payee thereof. I am of opinion that only one inference may be drawn from these uncontroverted facts, and that is that, while the appellant erroneously believed that his correspondent was Lieut. Col. Marsh, he did not de-

termine that question, and reasonable care did not require that he determine it. His suspicions had not been aroused, and, while he had no reason to doubt who·the writer was, he fully protected himself by addressing his correspondence in the name of the official with the official title prefixed, and by making the checks payable to the officials by their respective titles of office. The appellant did not personally deliver the checks, and thus pass on the identity of the payee. He transmitted them by mail, so addressed that without violating the law they could not be received and opened by any one other than the army officers, and made the checks out in such form that they could not be collected by any one other than the army officers, without the commission of the crime of forgery, and failure on the part of the person or corporation cashing them in the first instance to require proper identification. In these circumstances, I think no title to the checks passed to the impostor. The case is not distinguishable on the facts from Palm·v. Watt, 7 Hun, 317, in which it was held that an impostor who obtained by letter a check by assuming the name of the son of the sender of the check obtained no title thereto, although it was sent pursuant to a letter from him and representations therein made and to the address given. The case at bar is quite analogous I think to a sale of goods by correspondence to one impersonating another on whose credit the vendor intends to sell, in which case it is held that no title passes for the reason that the vendor did not intend to sell to the person ordering the,goods unless he was the person he represented himself to be. Williston on Sales, § 635, and Cundy v. Lindsaym, 3 A. C., 459, therein cited.

The respondent cites and relies upon Hoge v. First National Bank, 18 Ill. App. 501, and Emporia Bank v. Shotwell, 35 Kan. 360, 11 Pac. 141, 57 Am. Rep. 171, which tend to support his contention. They are somewhat distinguishable, however, on the facts, in that here each of the checks shows on its face, by being made payable to the officer by his official title, that the appellant did not intend to make his correspondent the payee, unless the correspondent was the Army officer. Moreover, those authorities are in conflict with Palm v. Watt, supra, which, being in our own jurisdiction, we prefer to follow especially, as we deem the rule there prescribed more reasonable and sound than the one adopted in the cases in other jurisdictions. The respondent also relies on Land Title & Trust Co. v. Northwestern Nat. Bank, 196 Pa. 230, 46·Atl. 420, 50 L. R. A. 75, 79 Am. St. Rep. 717; Id., 211 Pa. 211, 60 Atl. 723, 107 Am. St. Rep. 565, which is likewise distinguishable on the ground that the payee was not as here designated as an official, which conclusively establishes his identity, but in that case the drawer of the check determined for itself the identity of the payee by a personal delivery of the check. With respect to the sale and delivery of property to an impostor, where the vendor passes on the question of his identity, it has been held that the title passes, although the transaction may be rescinded for fraud. Williston on Sales, § 635; Robertson v. Coleman, 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471; Edmunds v. Merchants' Transportation Co., 135 Mass. 283. See, also, Sherman v. Corn Exchange Bank, 91 App.

Div. 84, 86 N. Y. Supp. 341. It is unnecessary to decide whether a different result would be required if the appellant had delivered the checks personally, and had determined for himself·the identity of the payee which would present the question as to who was intended as the payee in a somewhat different·aspect and might give rise to a question of estoppel (see Gallo v. Brooklyn Savings Bank, 199 N. Y. 222–232, 92 N. E. 633, 32 L. R. A. [N. S.] 66; Oriental Bank v. Gallo, 112 App. Div. 360, 98 N. Y. Supp. 561, affirmed 188 N. Y. 610, 81 N. E. 1170; First Nat. Bank v. American Exchange Bank, 49 App. Div. 349, 63 N. Y. Supp. 58, affirmed 170 N. Y. 88, 62 N. E. 1089), and an adjudication on a question which so vitally affects the business of banking should be confined to the precise facts submitted for decision. A common carrier is liable for delivery to a fictitious firm where the shipment of the goods is fraudulently induced, even though they are consigned as ordered, and delivery is made to the person who ordered them. Price v. Oswego R. R. Co., 50 N. Y. 213, 10 Am. Rep. 475; Pacific Exp. Co. v. Shearer, 160 Ill. 215, 43 N. E., 816,, 37 L. R. A. 177, 52 Am. St. Rep. 324. This is on the theory that the carrier is an insurer of delivery to the true consignee, and that on any shipment of goods pursuant to a fictitious order by letter or by telegraph the consignor does not intend to deliver to the person or firm sending the order if he or it be an impostor or fictitious, and I think the decisions on that question tend to support the view herein expressed, that the defendant did not intend to deliver the checks to the writer of the letters or to make them payable to him unless he was the person he represented himself to be. There is no evidence of negligence or other conduct on the part of the defendant constituting an estoppel.

It follows, therefore, that the judgment and order should be reversed with costs, and since most of the material facts are shown by documentary evidence, which is incapable of being changed and it is not claimed that any material fact could be changed by a new trial, the complaint should be dismissed· with costs.

SCOTT and MILLER, JJ., dissent.