GRACE L. RUSSELL, PLAINTIFF-RESPONDENT, v. THE SECOND NATIONAL BANK OF PATERSON, DEFEND-ANT-APPELLANT.

Argued May 20, 1947—Decided October 21, 1947.

For the plaintiff-respondent, *Randal B. Lewis.*

For the defendant-appellant, *John P. Nugent* and *Frederick M. Rollenhagen.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. Miss Russell, a retired schoolteacher, suffered material losses as a result of a fraud practiced upon her by Fred Baron, alias Fred Bloom, and Ernest T. Brasch, alias Henry Williams. Baron and Brasch were indicted for the fraud, entered pleas of *non vult* and are serving sentences thereunder in the State Prison. The appel-

lant bank honored the checks which had been fraudulently obtained but which, drawn and signed by Miss Russell against her account in that bank, came to it in the course of business from a correspondent bank. Judgment, here under appeal, was entered against the bank for the total amount of the checks, $22,170, plus $4,887.86 interest calculated from the several dates when the checks were charged to Miss Russell's account.

The method by which the fraud was accomplished was that Baron, one of the swindlers, called Miss Russell by telephone, represented himself to be a man well known locally, asked for contributions toward some worthy cause, and induced Miss Russell, not only to make numerous gifts, but to draw the checks to a fictitious name and deliver them to a caller.

In early June of 1942 Miss Russell was addressed on the telephone by a voice which said that the speaker was Herman Geller. A prominent resident of Paterson bore that name. He was not known to Miss Russell personally but was by reputation. The speaker said that he was interested in a project for the rehabilitation of disabled soldiers, that he would like Miss Russell to help, that he did not want his name to appear and that he would like the contributions to be made by check payable to his secretary, Henry Williams, who would call for the same. Shortly thereafter a man called at Miss Russell's home, said that he was Henry Williams, asked for and received Miss Russell's check which, dated June 15th, 1942, in the amount of $500, drawn on the defendant bank to the order of Henry Williams, was delivered to him by Miss Russell in person. The telephone voice was that of Fred Baron. The caller at the house was Ernest T. Brasch. There was no one answering to the name Henry Williams except Brasch, who assumed it for the purposes of the fraud. Brasch delivered the check to Baron who endorsed it "Henry Williams." The check was then further endorsed by Brasch in his own name and either cashed or deposited at a bank other than the defendant. That performance was repeated without material variation on seventeen other occasions until September 28th, 1944, and in amounts varying from $100 to $500. The checks were all cleared through banking chan-

nels. As to the six remaining payments in the Williams series there was a variation in that after the endorsement of the Williams name by Baron the checks were cashed without further endorsement by Brasch.

At about the same time Miss Russell received a telephone message from a man who said he was John Grimshaw. Mr. Grimshaw was a well known lawyer of Paterson. He had for a long time been acquainted with Miss Russell, although he had not been seen by her for several years. The impersonator stated that Miss Russell's help was wanted for a boys' camp but that he did not want any publicity for himself and would like Miss Russell to make payments by checks drawn to the order of his secretary, whose name was given as George Wilson. So started a line of thirty-four checks by Miss Russell to the order of George Wilson, the first dated June 29th, 1942, in the amount of $650 and the last drawn and delivered the latter part of August, 1944, in the amount of $200. The person speaking as John Grimshaw was Fred Baron. Baron, in giving the name George Wilson as the payee on the check, knew there was no person bearing that name and planned to sign, as he actually did sign, the name by way of endorsement. The *modus operandi* was that Miss Russell would receive a telephone request from a man (Baron) who said he was John Grimshaw; she would then draw a check to the order of George Wilson, place it in an envelope addressed to John Grimshaw and deliver it at her door, either in person or by her housekeeper, to a messenger, a boy about fifteen years of age, who called and asked for "the letter for Mr. Grimshaw." Baron then endorsed the name "George Wilson," and, in most instances, Brasch endorsed beneath with his own genuine signature and the check was cashed or deposited at a bank.

A third phase of the fraud was a check for $350, properly in the George Wilson series, which, on September 11th, 1943, Miss Russell inadvertently drew to the order of John Grimshaw instead of to the order of George Wilson. That check was endorsed by Fred Baron with the name, wrongfully purporting to be the signature, of John Grimshaw, and also was endorsed and banked by Brasch. In the usual course of bank

clearances the check was forwarded to the defendant bank and charged against Miss Russell's account. The Grimshaw endorsement is conceded to be a forgery, and the appeal is abandoned as to it except for the interest addition.

The disclosure came in October of 1944 when Miss Russell, having received simultaneous requests from both fraudulent sources, unintentionally placed the "Henry Williams" check in the envelope which was intended for the "George Wilson" payment and was addressed to John Grimshaw. Shortly thereafter Miss Russell met Mr. Grimshaw and apologized for the supposed error, whereupon she learned the beginning of the truth. On October 23d, 1944, she made demand upon the defendant bank for reimbursement, was refused and thereafter brought this suit.

The suit for recovery is upon the ground that the bank had unlawfully and wrongfully paid the checks out of plaintiff's checking account. The case was tried by the court without a jury. Verdict went in favor of the plaintiff for the total amount of the claim.

Miss Russell did not know that the name "Henry Williams" was fictitious. To her it designated the man whose real name was Ernest T. Brasch. She drew the checks in the belief that the named payee was the person who was physically in her presence and to whom she personally delivered the checks. It was he who, by her purpose and expectation, was to endorse the checks with the name "Henry Williams."

A leading case with pertinent reasoning is *Montgomery Garage Co.* v. *Manufacturers Liability Insurance Co.,* 94 *N. J. L.* 152, wherein Mr. Justice Trenchard, holding the opinion for this court, said:

"Where, as here, the drawer of a check delivers it, for a consideration which turns out to be fraudulent, to an imposter under the belief that he is the person whose name he has assumed and to whose order the check is made payable, a *bona fide* holder for a valuable consideration paid to the imposter upon his endorsement of the payee's name, is entitled to recover from the drawer, it appearing that the person to whom the check was delivered was the very person whom the drawer intended should endorse it and receive the money,

and that the drawer made no inquiry before issuing the check concerning the identity or credit of the named payee, who was unknown to the drawer. *United States* v. *National Bank,* 45 *Fed. Rep.* 163; *Meyer* v. *Indiana Bank,* 61 *N. E. Rep.* 596; *Emporia Bank* v. *Shotwell,* 35 *Kan.* 360; *Robertson* v. *Coleman,* 141 *Mass.* 231; *First Bank* v. *American Bank,* 49 *N. Y. App. Div.* 349; *Merchants L. & T. Co.* v. *Bank of Metropolis,* 7 *Daly* 137; *Land Title and Trust Co.* v. *N. W. Bank,* 196 *Pa.* 230; *Metzger* v. *Franklin Bank,* 119 *Ind.* 359.

"And see *Meridian Bank* v. *First Bank,* 7 *Ind. App.* 322; *Elliott* v. *Smitherman,* 2 *Dev. & B.* (*N. C.*) 338; *Forbes* v. *Espy,* 21 *Ohio* 474, in which, though the name adopted by the swindler appears to have been really fictitious, the loss is thrown on the drawer for the same reason.

"In the present case the plaintiff has merely carried out the drawer's intent. In other cases of fraudulent impersonation the drawer is sometimes said to have a double intent; first, to make the check payable to the person before him, and secondly, to make it payable to the person whom he believe the stranger to be. But the courts have almost unanimously held that the first is the controlling intent except where the named payee was already known to the drawer, as in *Cundy* v. *Lindsay,* 3 *A. C.* 459, and *Rossi* v. *National Bank,* 71 *Mo. App.* 150, or was more particularly identified in some manner, *e. g.,* by some designation, description or title, as in the case of *Mercantile National Bank* v. *Silverman,* 148 *App. Div.* 1; 132 *N. Y. Supp.* 1017, none of which factors are present in the case at bar. A man's name is the verbal designation by which he is known, but the man's visible presence is a surer means of identification. In the case at bar, if the plaintiff, before cashing the check, had sent for and asked the drawer whether or not the person presenting the check was the person to whom it was intended to be paid, the answer would have been in the affirmative. Of course the drawer was deceived as to the name of the man it was dealing with, but it dealt with and intended to deal with the visible man who stood before it, identified by sight and hearing. Thinking this man's name was N. K. Turner, it drew a check to N. K.

Turner's order intending thereby to designate the person standing before it. Clearly, therefore, the plaintiff has simply paid the money to the person to whom the drawer intended it should be paid. Now either the plaintiff or the defendant must suffer the loss. Both were innocent parties, and the loss justly falls upon the defendant, whose mistake in issuing the check facilitated the fraud and primarily made such loss possible."

The rule is stated thus in 5 *Michie on Banks and Banking* 515:

"Though there is authority to the contrary, it is generally held that a bank is not liable for a payment on a forged indorsement, where the person committing the forgery and receiving the money was in fact the person to whom the drawer delivered the check, and whom he believed to be the payee named, and who was the individual intended to receive it."

Most of the cases support the view—sometimes called the "impostor rule"—that where the drawer delivers a check to an impostor as payee supposing that he is the person he had falsely represented himself to be, the impostor's subsequent endorsement of the paper in the name by which the payee is described is to be regarded as a genuine endorsement between the drawer and the drawee who pays the paper on such endorsement. *Hartford Accident and Indemnity Co.* v. *Middletown National Bank* (*Conn.*), 10 *Atl. Rep.* (2d) 604; *Meridian National Bank* v. *First National Bank* (*Ind.*), *supra;* 33 *N. E. Rep.* 247; *Meyer* v. *Indiana National Bank, supra;* *Halsey* v. *Bank of New York and Trust Co.,* 270 *N. Y.* 134; 200 *N. E. Rep.* 671; 3 *R. C. L.* 1002; *Tit. "Bills and Notes,"* § 211; 7 *Am. Jur.* 435, *Tit. "Banks,"* § 599; *Schweitzer* v. *Bank of America, &c.* (*Calif.*), 109 *Pac. Rep.* (2d) 441. To like effect *Forbes & King* v. *Espy Heidelbach & Co., supra.* The federal rule appears to be likewise. *United States* v. *First National Bank,* 131 *Fed. Rep.* (2d) 985; *Continental-American Bank and Trust Co.* v. *United States,* 161 *Id.* 935. See, also, the annotation and cited cases in 22 *A. L. R.* 1228; 52 *A. L. R.* 1326, and 112 *A. L. R.* 1435, both as to this question and the questions concerning the "Wilson" checks.

"The name of a person is the verbal designation by which he is known, but the visible presence of the person affords surer means of identifying him than his name." *Robertson* v. *Coleman et al.* (*Mass.*), *supra;* 4 *N. E. Rep.* 619.

If the endorsement "Henry Williams" had been written by Brasch, whose alias it was, this branch of the case would clearly be within the application of the foregoing rule. The trial judge held that the endorsements of the payee's name by Baron were forgeries. Under the law as we find it the facts do not sustain that holding. The proof was that all of those checks were delivered by the drawer to Brasch under the belief that he was Henry Williams, that Brasch passed them to Baron, that Baron endorsed them with the name "Henry Williams," that this was done with Brasch's knowledge and that the purpose in having Baron, rather than Brasch, write the necessary endorsement was to avoid any similarity in handwriting between the payee's name and the genuine signature of Brasch which, on seventeen of the twenty-four checks, was immediately infraposed for the purpose of banking, that Brasch was actually present during the making by Baron of most of those writings and that Brasch's own endorsements were his proper signatures. The inevitable conclusion is that Brasch, whose endorsement of the assumed name would as between the parties hereto have been good, authorized the signing by Baron. The proofs support no other finding. Therefore, in our opinion, the endorsements of the name "Henry Williams" were not forgeries in the sense that the defendant bank should answer to the drawer for not having detected and exposed the fraud. The bank is not liable to the drawer on that group of checks.

The "Wilson" checks present a different case. Here not only was the name of the payee fictitious, but there was no one representing himself as, or represented by another to be, the person of that name. The name had no embodiment and presented no objectivity. Identification was not afforded by visible presence; not even at the other end of the communication system was there a personality identifiable as such. Baron had, over the telephone, asked Miss Russell to draw the checks in that way, but he did not represent himself to be

that person. He never held himself out as the payee. His uncontradicted testimony was: "I didn't assume that name. I told her to make the checks out to that name, but I didn't assume that name." *Cf. Commonwealth* v. *Globe Indemnity Co.* (*Pa.*), 185 *Atl. Rep.* 796. The person who called for and received the checks was not held out to be the person so designated. The name brought no image to the mind of Miss Russell, and she would have been unable, if called upon, to describe the appearance of the payee. The checks left Miss Russell's custody in an envelope addressed to, and intended to go to, John Grimshaw, not to Mr. Grimshaw's secretary or to anyone other than the addressee. No one but Mr. Grimshaw or another acting with his authority had a right to receive the envelope or to remove its contents. There was not a valid delivery. Each check was abstracted from its envelope by one wholly unauthorized to do so and, with fraudulent intent, was endorsed "George Wilson" by a person who knew of that unauthorized removal, who did not carry or respond to the name either of John Grimshaw or of George Wilson and who was not authorized by anyone so known or by anyone objectively intended by the drawer to be the payee. The endorsement thereon by Baron was a forgery.

We find no occasion to apply the principle that between an innocent drawer and an innocent drawee the loss should be borne by the drawer whose act made the loss possible beyond the force given to it *supra* in the disposition of the Henry Williams checks. It is argued by appellant that the respondent is estopped by her negligence from claiming reimbursement. The essential elements of estoppel, *Central Railroad Co.* v. *MacCartney,* 68 *N. J. L.* 165, 175; *Smith* v. *National Commercial Title and Mortgage Guaranty Co.,* 120 *Id.* 75, 83, are not present. The character of examination which plaintiff, as a depositor, was called upon to make of the returned bank vouchers and the recurring monthly bank statements (*Harter* v. *Mechanics National Bank, infra*) would not reasonably disclose the forgeries upon which the recovery herein is sustained.

Generally, a bank is liable to the drawer of a check for paying it on a forged endorsement, in the absence of estoppel,

contributory negligence, or ratification, or unless the money has reached the intended person. *Harter* v. *Mechanics National Bank,* 63 *N. J. L.* 578. See, also, *R. S.* 7:2–23. The trial court found that respondent was not negligent as to the circumstances surrounding the Grimshaw checks. We affirm that finding. When the trial judge, sitting without a jury, found as a fact that the instrument was forged, and that finding was supported by substantial evidence, it is conclusive on appeal. *Seidman* v. *North Camden Trust Co.,* 122 *Id.* 580.

To the extent of each check wrongfully paid, the bank breached its contract and deprived the depositor of the use of funds which should have been at her call. The interest calculation was properly made from the date of each wrongful charge against the account. See *Board of Education* v. *National Union Bank,* 121 *N. J. L.* 177.

Finally, appellant contends that the trial court erred in permitting William P. Seddon, an attorney-at-law, who, when this litigation arose, was and had been for many years the legal adviser of and attorney for the bank, to answer, over the bank's objection, this question put by the plaintiff: "What did you do regarding your own bank, the Second National, as to how they should act?" The objection was that the question went to a communication privileged as to the bank. The witness did not claim privilege and answered that he advised the bank to refund the money to Miss Russell and to have recourse against the Federal Reserve Bank for the amount of the checks which bore the guarantee of that institution. The protection of the privileged communication is not for the lawyer but for the client. *Sayre* v. *Administrator,* 14 *N. J. L.* 487, 493. The general rule was stated by this court in *State* v. *Loponio,* 85 *Id.* 357, 360, as follows:

"Where, therefore * * * legal advice of any kind is sought from a duly accredited professional legal advisor in his capacity as such, the communications relevant to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself, or by the legal advisor, or by the agent of either confidentially used to transmit the communications, except the client waives the protection."

Following that statement of the rule it was held by the Supreme Court in *State* v. *Snook,* 93 *N. J. L.* 29, that the privilege is personal to the client. The Court of Errors and Appeals decision on the appeal of the last cited case, reached by an equally divided court, established nothing new in law. By the weight of authority the attorney's communications to the client are also within the privilege. 8 *Wigmore on Evidence* (*3d ed.*) 625, ¶ 2320. See 70 *C. J.* 430, *Tit. "Witnesses,"* § 573. Although it was subsequently noted on the record that the original papers in this suit were filed by Mr. Seddon as attorney for Miss Russell, the case does not, we think, come within the principle stated in *Gulick* v. *Gulick,* 39 *N. J. Eq.* 516, where the attorney was acting simultaneously for both parties and therefore could not be regarded as the depositary of confidential communications from the one side or the other. *Cf.* 28 *R. C. L.* 566, *Tit. "Witnesses,"* § 156. It does not appear that Mr. Seddon was simultaneously acting for both parties or that either party knew that he was acting for the other.

The communication was privileged. The question should have been overruled upon the stated objection. However, we find that the appellant did not suffer from the ruling. The testimony was heard only by the court, not by a jury. The judge stated in detail the reasons for his finding. It is obvious that the disputed testimony had no weight in his decision and it has none in ours. The admission was a technical error, but it was not harmful.

The parties stipulated that there are no disputed facts. The *postea* upon which the judgment was entered states "There was no factual dispute." The briefs before us are consistent therewith. Apparently it is the purpose of the parties that the case shall be decided upon the determination of the correct legal principles and the application of those principles to the conceded facts. All amounts in issue are liquidated and are capable of certain calculation once the law applicable thereto is determined. There is, therefore, no occasion for retrial. The sum total of the "Henry Williams" checks and the interest thereon as embraced within the judgment of $27,057.86 will be deducted from the last named

amount and the resultant figure will be entered as the judgment for plaintiff, to carry interest in accordance with the provision of the judgment below from December 10th, 1946. The costs in the trial court, which are allowed in the judgment as printed in the state of case, to be added.

The record will be remitted to that end.

*For affirmance*—THE CHANCELLOR, DONGES, HEHER, JJ. 3.

*For reversal*—BODINE, McLEAN, JJ. 2.

*For modification*—THE CHIEF JUSTICE, COLIE, WACHENFELD, EASTWOOD, BURLING, WELLS, DILL, FREUND, McGEEHAN, JJ. 9.