**A. M. COVINGTON et al., Appellants,**

v.

**PENN SQUARE NATIONAL BANK, a National Banking Corporation, and Boulder Bank and Trust Company, a State Banking Corporation, Appellees.**

**No. 47974.**

Court of Appeals of Oklahoma,
Division No. 1.

Sept. 23, 1975.

Rehearing Denied Dec. 2, 1975.

Certiorari Denied Jan. 16, 1976.

Released for Publication by Order of Court
of Appeals Jan. 22, 1976.

Covington, Farrar & Poe, by A. M. Covington, James E. Poe, Tulsa, for appellants.

Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellee Penn Square National Bank.

Ungerman, Grabel & Ungerman, Tulsa, for appellee Boulder Bank & Trust Co.

REYNOLDS, Judge:

This is a suit against two banks to recover the amount of a cashier's check obtained from plaintiff by fraud and paid in contravention of a stop order. The case was submitted to the trial court on pleadings, admissions and interrogatories. The plaintiff appeals summary judgment for the defendant banks.

In November of 1972 one James F. Beaird, Jr. contacted the plaintiffs to sell them an oil lease. He represented himself to be an employee of Western Geophysical Company of Houston, Texas, and showed the plaintiffs a map which purported to show the location of eight test well holes located on the leased property along with purported logs of the eight holes showing oil sand. The plaintiffs placed a telephone call to Western Geophysical and asked if James Beaird was an employee. They were told that a man with the name of James "Baird" (spelled B-a-i-r-d) was in charge of data processing. When asked how his name was spelled, James Beaird said that his name was spelled with an "i".

On November 16, 1972, plaintiffs purchased a cashier's check from defendant Boulder Bank in Tulsa in the amount of $6,400.00 payable to James *Baird*. They delivered it to James *Beaird* as consideration for the lease. The next day the check was cashed by defendant Penn Square National Bank in Oklahoma City. Beaird told the cashier, whom he had known for five years, that his name was misspelled on the check. On request of the cashier he endorsed the check twice, James Baird and James F. Beaird, Jr.

On November 18 and 19 the plaintiffs became suspicious, and on investigation learned that James Beaird was not the same James Baird who was employed by Western Geophysical and that no oil exploration had been done on the lease which they had purchased. On Monday morning, November 20th, plaintiffs requested the Boulder Bank to stop payment on the cashier's check. The bank agreed to do so in return for plaintiffs' promise to hold Boul-

der harmless. It stamped "payment stopped" on the check and returned it to Penn Square. Penn Square again demanded payment. Boulder concluded that it could not legally stop payment and forwarded to Penn Square the amount of the check.

Suit was filed by plaintiffs against both banks in March of 1973. In August of 1974 the defendants filed a Joint Motion for Summary Judgment. The trial court sustained the motion.

On appeal, it is contended by appellants that the payee of the cashier's check was one James Baird, an employee of Western Geophysical Company of Houston, Texas, but that the payment by Penn Square Bank was to one James F. Beaird, Jr., who is a different individual; that the payment to Beaird resulted from a forged indorsement. Therefore, Penn Square Bank is liable for the loss since it indorsed the check with all prior indorsements guaranteed, and Boulder Bank is liable as it violated its agreement to refuse payment on the check.

█ Statutory language and case law unmistakably place the burden of loss from a forged instrument on the party who deals with the forger. A bank is obliged to pay only according to the customers order.

Oklahoma dealt with this subject in detail in *P. & H. Finance Co. v. First State Bank of Seminole,* 185 Okl. 558, 94 P.2d 894, the single syllabus holding:

"When a bank cashes a check upon which payee's indorsement is forged and transmits the check, with its own indorsement, to the drawee bank, it guarantees previous indorsements, and having voluntarily surrendered proceeds of such check to the drawee bank, where the money has been re-credited to the drawer, the cashing bank cannot recover the proceeds in an action against the drawer and drawee bank."

The Uniform Commercial Code, 12A O. S.1971, § 3–404(1), did not alter this rule as it states:

"Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; . . ."

An unauthorized signature is defined in 12A O.S.1971, § 1–201(43) as " . . . one made without actual, implied or apparent authority and includes a forgery."

█ This rule is designed to protect bank customers from financial loss incurred through forgeries of lost or stolen checks. The rule is not rigid, however, because it has exceptions. One of these exceptions is carved out by 12A O.S.1971, § 3–405(1)(a) which states the imposter rule:

"(1) An indorsement by any person in the name of the named payee is effective if

"(a) an imposter by the use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or . . ."

█ The policy underlying this rule is that the person who is taken in by an imposter or a dishonest employee should bear the burden of loss rather than a collecting bank. This is so despite the fact that the transaction with the collecting bank is based on a forgery.

█ The cases previously decided concerning forgeries on certified checks are not in point with the case at bar. In this fact situation, James F. Beaird, Jr. dealt directly with the plaintiffs. They were induced by him to purchase the check. The check was purchased by the plaintiffs as consideration for the oil lease and presented to him personally.

The imposter rule was stated in *Schweitzer v. Bank of America N. T. & S. A.,* (1941), 42 Cal.App.2d 536, 109 P.2d 441.

" . . . [W]here a check is delivered to an imposter as payee and the drawer believes that the imposter is the person upon whose endorsement it will

be paid, the endorsement by such imposter in the name which he is using to impersonate another is not a forgery . . . If a buyer is deceived as to the true name of the individual with whom he deals, but at the same time he intends to purchase from the man who commits the deception, he there identifies the seller by sight and hearing."

On a motion for summary judgment, " . . . [T]he Court shall render judgment if it appears that there is no substantial controversy as to any material fact and that any party is entitled to judgment as a matter of law." 12 O.S.Supp.1974, Ch. 2, App., Rule 13.

This Court finds no substantial controversy as to the material facts.

Affirmed.

ROMANG, P. J., and BOX, J., concur.