**FAIR PARK NATIONAL BANK and Juanita Akins, Appellants,**

v.

**SOUTHWESTERN INVESTMENT COMPANY, Appellee.**

**No. 19001.**

Court of Civil Appeals of Texas, Dallas.

Sept. 2, 1976.

Rehearing Denied Sept. 30, 1976.

James H. Baumgartner, Jr., Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellants.

Cleo G. Clayton, Jr., Clayton & Stubblefield, Amarillo, for appellee.

GUITTARD, Justice.

The "impostor rule" of the Uniform Commercial Code [1] fixes the loss resulting from the fraud of an impostor on the drawer of a check or draft who delivers it to the impostor rather than on a subsequent holder, regardless of the lack of a genuine endorsement by the nominal payee. This case involves applicability of this rule to a draft delivered to one impostor but payable to two payees. We hold that the impostor rule applies so that the drawer cannot recover against the collecting bank on the ground of the lack of genuineness of the endorsement of either of the joint payees. We hold also that the bank is not liable to the drawer for the alleged negligence of the bank's employees for failure to verify the authenticity of the endorsements.

The trial was before a jury, but the facts are substantially without dispute. Plaintiff Southwestern Investment Company agreed to lend $12,000 to James Impson to finance the purchase of a "front loader" machine from persons named by Impson as J. L. Williams and James L. Wilson of Euless, Texas, doing business as Universal Constructors. One of Southwestern's employees inspected the machine pointed out by

---

1. Tex.Bus. & Comm.Code Ann § 3.405(a)(1) (Vernon 1968). All references to sections of the Uniform Commercial Code in this opinion will be to the corresponding sections of Tex. Bus. & Comm.Code Ann. (Vernon 1968).

Impson and approved the security. Southwestern required a bill of sale from the sellers and also a guarantor on the note. When the note was signed by Impson and his guarantor, Southwestern prepared at Impson's direction a draft for $12,000 payable to J. L. Williams and James L. Wilson. Shortly afterward, a man representing himself to be J. L. Williams appeared at Southwestern's Dallas office with a bill of sale purportedly signed by J. L. Williams and James L. Wilson and tendered it in exchange for the draft. Without requiring any identification, Southwestern accepted the bill of sale and delivered the draft to the supposed J. L. Williams.

Later, Impson, the borrower, appeared at Fair Park National Bank and presented the draft to the teller, Juanita Akins, who knew him as a customer of the bank. She saw that the draft bore the purported endorsements in blank of both payees and accepted it for deposit in Impson's account without requiring any endorsement by him. The Fair Park Bank stamped its endorsement with the notation "Previous Endorsement Guaranteed," and sent the draft to Amarillo National Bank, which charged Southwestern's account and paid the draft with a cashier's check to Fair Park Bank. Fair Park Bank then issued to Impson its cashier's check for the amount of the draft.

After three payments were made on Impson's note to Southwestern, Impson defaulted, and the guarantor likewise failed to pay. Southwestern undertook an investigation, which revealed that the machine had not been purchased from J. L. Williams and James L. Wilson, but had been stolen. No trace could be found of Williams, Wilson, or of any firm doing business as Universal Constructors. Southwestern then sued Impson, his guarantor, Juanita Akins, and both banks for breach of warranty, negligence, fraud, conversion, and money had and received, without differentiating between the kinds of claims it asserted against the several defendants.

In response to special issues the jury found that J. L. Williams and James L. Wilson failed to endorse the draft before it was delivered by Impson to defendant Fair Park Bank, that Fair Park Bank was negligent in not verifying that the named payees had endorsed the draft, and that both J. L. Williams and James L. Wilson were impostors. On this verdict the court rendered judgment jointly and severally against all defendants except the Amarillo bank for the balance of the note, interest, and attorney's fee.

1. *Liability for Breach of Warranty*

■ Defendants Fair Park Bank and Juanita Akins have appealed, contending that under the impostor rule, the endorsements on the draft were effective, whether or not they were the genuine signatures of J. L. Williams and James L. Wilson. Southwestern responds that even though the man representing himself to be Williams may have been an impostor, so that the endorsement was effective as respects his purported signature, nevertheless there was no effective endorsement by or on behalf of the other payee, James L. Wilson, because no person representing himself as Wilson had any connection with the issuance of the draft. Southwestern argues that under § 3.116(2) of the Code, when an instrument is payable to two or more persons and not in the alternative, it must be negotiated by both. Consequently, Southwestern asserts that Fair Park Bank is liable for breach of warranty of the Wilson endorsement.

We conclude that Fair Park Bank is not liable for breach of warranty for two reasons. In the first place, the impostor rule applies to the person who signed the bill of sale as James L. Wilson as well as to the person who signed as J. L. Williams. The jury found that Wilson as well as Williams was an impostor. Southwestern does not attack this finding for lack of evidence, but contends rather that this finding is immaterial because whether Wilson is an impostor within the meaning of § 3.405(a)(1) is not a question of fact but a question of law, which the trial court properly resolved in Southwestern's favor. Apparently, Southwestern's position is that there was no imposture with respect to James L. Wilson

because no one pretending to bear that name appeared before Southwestern's representative and joined with the purported J. L. Williams in inducing Southwestern to deliver the draft.

This argument erroneously assumes that an "impostor" under § 3.405(a)(1) must meet his victim face to face. That section does not so provide. Rather, it states the rule as follows:

(a) An indorsement by any person in the name of a named payee is effective if (1) an imposter [sic] by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee . . ..

One of the purposes of drafting the rule in this language was to eliminate the requirement of a face-to-face meeting, which had been imposed by some of the pre-Code cases. Uniform Commercial Code, § 3–405, Comment 2; *Philadelphia Title Insurance Co. v. Fidelity-Philadelphia Trust Co.,* 419 Pa. 78, 212 A.2d 222, 225 (1965); and *see First State Bank v. Oak Cliff Savings & Loan Ass'n,* 387 S.W.2d 369, 376 (Tex.1965, Greenhill, J., dissenting). Under the Code, it is only necessary that "an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee."

██ Here the evidence and the verdict established that the person who signed the bill of sale as "James L. Wilson," as well as the person who signed as "J. L. Williams," was an impostor. Southwestern's own evidence showed that there never was any partnership composed of J. L. Williams and James L. Wilson doing business as Universal Constructors at the address given by Impson. This evidence supports the jury's finding that "the James L. Wilson in question"—that is, the person who signed the bill of sale in that name—was an impostor.[2]

Although an *impostor* cannot be a fictitious person, since there must be a real person who impersonates someone else, an impostor may impersonate a fictitious person.[3] Both of the persons who signed the bill of sale induced Southwestern to issue the draft, since, presumably, Southwestern would not have issued it without a bill of sale bearing both signatures. Consequently, § 3.405(a)(1) makes both endorsements effective to relieve Fair Park Bank of liability for breach of warranty, regardless of who wrote them.

██ In the second place, we conclude that the impostor rule applies even if the "James L. Wilson" named in the bill of sale, or the person who signed the bill in his name, was not an impostor. Southwestern does not challenge the finding that the man who represented himself as J. L. Williams was an impostor. In effect, it concedes that the endorsement of this name on the draft was effective under § 3.405(a)(1), but it contends that unless Wilson also is shown to be an impostor, the bank is liable for breach of its warranty of his endorsement. We cannot agree. Section 3.405(a)(1) is not limited to situations in which impostors have impersonated all the joint payees. If an impostor "has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee," the endorsement of any person "in the name of a named payee is effective." We interpret this language to mean that if an instrument is payable to *A* and *B,* and *X,* by impersonating *A,* induces the drawer to deliver the instrument to him, then *X,* or anyone else, can make effective endorsements in the names of both *A* and *B.* This interpretation is consistent with the policy of the impostor rule, which is to throw the loss resulting from dealing with an impostor on the person who dealt with the impostor, and, presumably, had the best opportunity

---

**2.** This issue would have been less confusing if it had inquired whether "the person who signed the bill of sale as James L. Wilson was an impostor," but apparently the jury so understood it, and no objection to the wording of the issue is before us.

**3.** The trial court's instruction in connection with its definition of impostor that an impostor cannot be a *fictitious person is consistent with* this view.

to take precautions that would have detected the fraud, rather than on a subsequent holder, who had no similar opportunity. *Covington v. Penn Square National Bank,* 545 P.2d 824, 826 (Okl.App.1975); F. Hart and W. Willier, Commercial Paper Under the UCC § 3.08[2], at 3–23 (2 Bender's UCC Service 1975); O'Malley, *Common Check Frauds and the Uniform Commercial Code,* 23 Rutgers L.Rev. 189, 222 (1969). A drawer who deals with a person impersonating one of several payees has as good an opportunity to detect the fraud as one who deals with the impersonator of a single payee. Consequently, on this ground also we hold that the endorsement in the name of James L. Wilson was as effective under § 3.401(a)(1) as was the endorsement in the name of J. L. Williams.

### 2. *Liability for Negligence*

Southwestern contends that even if Fair Park Bank is not liable for breach of warranty of the endorsements, it is liable for its negligence in failing to verify their authenticity. Consequently, it argues that the trial court's judgment should be upheld on the basis of the jury's findings that Fair Park Bank was negligent in not verifying that the named payees had endorsed the draft and that such negligence was a proximate cause of Southwestern's paying the draft.

■■■■ This contention, also, is untenable. The Code does not impose on a subsequent holder a duty to use ordinary care or to act in accordance with reasonable commercial standards to protect a person who has issued an instrument to an impostor. Since § 3.401(a)(1) makes all endorsements in the name of the payee effective, the collecting bank has good title to the draft, and can have no more liability for negligence than for breach of warranty. When the draft is accepted and paid, as this draft was accepted by Southwestern and paid through the Amarillo bank, such acceptance and payment is "final" under § 3.418 of the Code in the sense that it cannot be recovered back, regardless of negligence. That section provides:

Except for recovery of bank payments as provided in the chapter on Bank Deposits and Collections (Chapter 4) and except for liability for breach of warranty on presentment under the preceding section, payment or acceptance of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment.

Consequently, the alleged negligence of the collecting bank provides no ground of liability.

This effect of § 3.418 was recognized by this court in the analogous case of *Aetna Life and Casualty Co. v. Hampton State Bank,* 497 S.W.2d 80 (Tex.Civ.App.—Dallas 1973, writ ref'd n. r. e.). In that case a check was payable to a fictitious payee and, therefore, was governed by subdivision (2) of § 3.405(a), which provides that an endorsement by any person in the name of the payee is effective if the drawer intends the payee to have no interest in the instrument. We held that the collecting bank was not liable to the drawee bank for breach of warranty of endorsement because the endorsement in the name of the fictitious payee was effective to pass title. With respect to liability for negligence, we said that the payment by the drawee bank was "final" under § 3.418 in the sense that it could not be recovered back, and, consequently, that there could be no recovery for negligence unless the negligence amounted to a lack of good faith. *Id.* at 85. We now conclude that the same reasoning applies to an instrument issued to an impostor within the meaning of subdivision (1) of § 3.405(a).

The same result was reached on a different ground under subdivision (3) of § 3.405(a) in a case where the name of the payee was supplied to the drawer by a dishonest employee. *Prudential Insurance Co. v. Marine National Exchange Bank,* 371 F.Supp. 1002 (E.D.Wis.1974). In that case the court reasoned that since other sections of the Code, particularly §§ 3.406 and 4.406, impose liability for failure to use ordinary care, and § 3.405 makes no such requirement, the collecting bank's negligence is not

relevant and the drawer cannot avoid the defense provided in § 3.405 without a showing of bad faith. We approve this construction also and conclude that it applies to a case within the impostor rule stated in subdivision (1) of § 3.405(a).

### 3. *The Judgment*

Southwestern alleged further that it was entitled to recover from the bank for fraud, conversion, and for money had and received, but these allegations are neither supported by proof nor established by jury findings. Consequently, since we hold that Southwestern is not entitled to recover for breach of warranty or for negligence, the judgment of the trial court is reversed and judgment is rendered that Southwestern take nothing against Fair Park Bank. With respect to defendant Juanita Akins, since Southwestern does not advance any ground of independent liability on her part, the judgment against her is likewise reversed and judgment is rendered in her favor. In this connection we note that no issue concerning her negligence specifically, as distinguished from the negligence of the bank, was submitted to the jury. The judgment of the trial court is undisturbed with reference to the other defendants.

Reversed and rendered.