## TARKA v MID-STATE FEDERAL SAVINGS, etc., et al.

### Case No. 86-146-CA-C

Fifth Judicial Circuit, Marion County

July 6, 1987

#### APPEARANCES OF COUNSEL

**R. Scott Cross** for plaintiff.

**John P. McKeever** for defendant Mid-State Federal Savings & Loan Association.

**Edward O. Savitz** for defendant Citibank (New York State), N.A.

34

## OPINION OF THE COURT

THOMAS D. SAWAYA, Acting Circuit Judge.

### ORDER GRANTING PLAINTIFF'S MOTION FOR DIRECTED VERDICT

The Plaintiff, MADELINE TARKA, sued the Defendants, CITIBANK (NEW YORK STATE), N.A., (hereinafter referred to as CITIBANK), and MID-STATE FEDERAL SAVINGS AND LOAN ASSOCIATION (hereinafter referred to as MID-STATE) for damages resulting from forged indorsements on certain checks issued on certificate of deposit accounts belonging to Plaintiff. A jury trial resulted in a verdict for both defendants, MID-STATE and CITIBANK. Plaintiff moved for a Directed Verdict against CITIBANK on the grounds that the impostor rule found in Section 673.405(1)(a), Fla. Stat. (1985), did not apply. The court reserved ruling on that motion until a later date.[1]

Viewing the testimony and evidence in a light most favorable to CITIBANK,[2] the record reveals that the Plaintiff was a depositor of MID-STATE where she maintained two certificate of deposit accounts, one in the amount of $26,030.77, and the second in the amount of $20,000.00.

Plaintiff is an elderly lady and sometime around March, 1985, she introduced her grandson, Ted Reszka, to some of the MID-STATE employees as a relative who was going to help her with some of her financial affairs. The MID-STATE employees understood that Mr. Reszka was not to have access to her accounts nor was he to be a signatory on those accounts. Plaintiff instructed MID-STATE that she wanted her interest checks and correspondence sent to her at the address of Mr. Reszka where she would be staying.

Shortly thereafter, MID-STATE received instructions bearing the forged signature of the Plaintiff, instructing MID-STATE to close out Plaintiff's two certificate of deposit accounts and pay the monies out to the Plaintiff. Based on these written instructions, MID-STATE issued two checks payable to Plaintiff in the amount of $26,037.77 and $20,000.00 respectively and placed the checks in the mail and sent them to Plaintiff who was then residing with Mr. Reszka.

Pursuant to a service agreement between MID-STATE and CITIBANK, both checks were issued by MID-STATE, as drawer to

---

[1] Fla. R. Civ. P. 1.480(b).

[2] *Otey v. Florida Power & Light Co.*, 400 So.2d 1289 (Fla. 5th DCA 1981).

Plaintiff as payee and were payable as drawn by CITIBANK as drawee.

Both checks were subsequently indorsed with the forged signatures of Plaintiff and the accounts closed out. The Plaintiff never received the checks nor the monies therefrom.

The Plaintiff's cause of action against CITIBANK is premised on Section 673.419(1)(c), Fla. Stat. (1985), which provides that when a drawee pays over a forged indorsement, it is liable in conversion. CITIBANK relies on the impostor rule found in Section 673.405(1)(a), Fla. Stat. (1985), which renders a forged indorsement effective if an impostor induced the issuance of the check. Viewing the evidence and all inferences reasonably drawn therefrom in a light most favorable to CITIBANK, the only evidence in the record that we can consider in our search for an impostor is that Ted Reszka forged Plaintiff's signatures on the letters of instruction and on the back of the two checks.

The issue is whether the impostor rule applies under the facts of this case viewed in a light most favorable to CITIBANK.

Section 673.419(1)(c), Fla. Stat. (1985), provides that

(1) An instrument is converted when:

. . .

(c) It is paid on a forged indorsement.

CITIBANK asserts that the impostor rule relieves it of any liability. Section 673.405(1)(a), Fla. Stat. (1985), states:

(1) An indorsement by any person in the name of a second party is effective if:

(a) An impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee . . .

At common law, when an impostor induced a drawer to issue a check to him in another person's name by impersonating that other person, the impostor's indorsement in the payee's name was not treated as a forgery. See, e.g., *Hoge v. First Nat'l Bank*, 18 Ill. App. 501 (1886); *Robertson v. Coleman*, 141 Mass. 231, 4 N.E. 619 (1892). The policy basis for this rule was that the drawer was considered to have intended to issue the check to the person he dealt with, and the impostor, even though he had assumed another's name, was the person for whom the proceeds were intended. In refusing to consider his indorsement a forgery, the courts reasoned that they were simply

36

carrying out the drawer's intention. See, e.g., *Emporia Nat'l Bank v. Shotwell*, 35 Kan. 360, 11 P. 141 (1886); *Robertson v. Coleman*, 141 Mass. 231, 4 N.E. 619 (1886); *Forbes & King v. Espy, Heidelbach & Co.*, 21 Ohio St. 474 (1871). The drawer was also considered negligent in dealing with the impostor and not discovering his true identity. Between the two innocent parties—the defrauded drawer and the bank—it was considered more equitable to place the loss on the party who had a better opportunity to discover the imposture. See, e.g., *United States v. National Exch. Bank*, 45 F. 163 (C.C.E.D. Wisc. 1891); *Crippen, Lawrence & Co. v. American Nat'l Bank*, 51 Mo. App. 508 (1892); *Land Title & Trust Co. v. Northwestern Nat'l Bank*, 196 Pa. 230, 46 A. 420 (1900).

Although the impostor rule was generally accepted by the courts, application of the doctrine was inconsistent and artificial distinctions were drawn between similar factual situations. The primary cause of this inconsistency was the courts' adherence to the notion that the drawer had a double intent—to pay both the impostor himself and the named payee—and liability rested upon a determination of the drawer's "dominant" intent. When the drawer and the impostor dealt in person, the courts found that the drawer's dominant intent was to make the check payable to the person with whom he had deal—the impostor under his assumed name. See, e.g., *Greenberg v. A&D Motor Sales, Inc.*, 341 Ill. App. 85, 93 N.E. 2d 90 (1950); *Montgomery Garage Co. v. Manufacturers' Liab. Ins. Co.*, 94 N.J.L. 152, 109 A. 296 (1920); *Halsey v. Bank of N.Y. & Trust Co.*, 270 N.W. 134, 200 N.E. 671 (1936). This certainty lessened, however, when the impostor utilized the telegraph, telephone, or mails to implement his fraud. Although the majority of courts applied the impostor rule in this situation as well (see, e.g., *United States v. First Nat'l Bank & Trust Co.*, 17 F.Supp. 611 (W.D. Okla. 1936); *Uriola v. Twin Falls Bank & Trust Co.*, 37 Idaho 332, 215 P. 1080 (1923), some courts held that the drawer's dominant intent was to deal with the named payee and not the impostor, and thus the impostor's indorsement was considered a forgery. See, e.g., *Russell v. Second Nat'l Bank*, 136 N.J.L. 270, 55 A.2d 211, (1947); *Mercantile Bank v. Silverman*, 148 A.D. 1, 132 N.Y.S. 1017 (1911), *aff'd*, 210 N.Y. 567, 104 N.E. 1134 (1914). This distinction, however, was a complete fiction that was not based on the facts of the cases. Because the drawer believes the impostor and the named payee to be the same person, determining his dominant intent created a distinction without a factual basis. *Cohen v. Lincoln Sav. Bank*, 275 N.Y. 399, 10 N.E.2d 457 (1937).

Section 673.405(1)(a), Fla. Stat. (1985), codifies the common law

impostor rule. The statute attempts to eliminate the inconsistent common law applications of the doctrine by rejecting the dominant intent fiction and the requirement of face-to-face dealing or prior negotiations between the parties. U.C.C. Section 3.405(1)(a) & Comment 2. The policy behind the statute is that the drawer is in a better position to identify the impostor as such and, if he fails to do so, the bank that cashes the check for the forger should not be required to ascertain the impostor's true identity. U.C.C. Section 3.405, Comment 2; see, *Covington v. Penn Square Nat'l Bank*, 545 P.2d 824 (Okla Ct. App. 1975); *Fair Park Nat'l Bank v. Southwestern Inv. Co.*, 541 S.W.2d 266 (Tex. Civ. App. 1976).

Because the technical distinctions that resulted from determinations of the drawer's dominant intent are eliminated, the loss will be allocated to the drawer whether he was induced to draw a check to the impostor because of face-to-face dealings (see, e.g., *Covington v. Penn Square Nat'l Bank*, 545 P.2d 824 (Okla Ct. App. 1975); *Fair Park Nat'l Bank v. Southwestern Inv. Co.*, 541 S.W.2d 266 (Tex. Civ. App. 1976), or through the mails. *Franklin Nat'l Bank v. Shapiro*, 7 U.C.C. Rep. Serv. 317, 321-22 (N.Y. Sup. Ct. 1970).

CITIBANK would argue by citing *Fidelity and Deposit Co. of Maryland v. Manufacturers Hanover Trust Co.*, 313 N.Y.S.2d 823 (Civ. Ct. N.Y. 1970), that presenting a forged signature on a supporting document or check through the mails would be sufficient to constitute an imposture. However, the historical analysis of the common law impostor rule and the cases that have interpreted U.C.C. Section 3.405(1)(a) make it clear that in order for the impostor rule to apply, the defrauder, in addition to utilizing an assumed name, must impersonate another person and induce the drawer to believe that he is in fact dealing with that person. U.C.C. Section 3.405, Comment 2; see, e.g., *East Gadsden Bank v. First City Nat'l Bank*, 50 Ala. App. 576, 281 So.2d 431 (Civ. App. 1973); *W.R. Grimshaw Co. v. First Nat'l Bank & Trust Co.*, 563 P.2d 117 (Okla. 1977); *A.M. Covington v. Penn Square Nat'l Bank*, 545 P.2d 824 (Okla. Ct. App. 1975); *Thieme v. Seattle First Nat'l Bank*, 502 P.2d 1240 (Wash. Ct. App. 1972); *People v. Traverse City State Bank*, 158 N.W.2d 65 (Mich. Ct. App. 1968); *Franklin Nat'l Bank v. Chase Manhattan Bank*, 58 Misc.2d 880, 328 N.Y.S.2d 25 (1972); *Maddox v. First Westroads Bank*, 256 N.W.2d 647 (Neb. 1977); *Owensboro Nat'l Bank v. Crisp*, 608 S.W.2d 51 (Ky. 1980); and *Leigh Co. v. Bank of New York*, 617 F.Supp. 147 (D.C.N.Y. 1985). Therefore, it is the impersonation that is the essential element for the impostor rule to apply.

CITIBANK'S position in this case and its reliance on *Fidelity* is

unfounded because it necessitates a finding that an impersonation occurs when someone appears before the drawer face to face or through the mail and does not pretend to be anyone other than himself. The *Fidelity* holding was properly rejected by the court in *East Gadsden Bank v. First City Nat'l Bank*, 50 Ala. App. 576, 281 So.2d 431 (Civ. App. 1973). The court correctly distinguished between an impersonation and a misrepresentation accompanied by a forged supporting document. A loan applicant who presented a forged buyer's order for an automobile did not thereby impersonate the dealer whose signature was forged, but merely misrepresented that he was purchasing an automobile and used the forged buyer's order to convince the bank. He did not pretend to be the dealer or anyone other than himself and, consequently, the forged dealer's signature on the joint check was not effective.

In this case, Ted Reszka did not impersonate anyone or pretend to be anyone other than himself. In fact, he was introduced by Plaintiff to the MID-STATE employees as Ted Reszka. He did forge Plaintiff's signatures on the two letters of instruction and on the back of the two checks, but this is not impersonation within the meaning of Section 673.405(1)(a), Fla. Stat. (1985). Although a person may be impersonating someone else when he signs that name on a document or check, he cannot be considered an impostor when he does not pretend to be the person whose named is forged to the document. To hold otherwise would mandate a finding that every forged document presented personally or through the mails is the equivalent of an impersonation thus rendering Section 673.419(1)(c), Fla. Stat., (1985), totally ineffective.

WHEREFORE, it is hereby ORDERED AND ADJUDGED that Plaintiff's Motion for Directed Verdict against CITIBANK is hereby granted.

DONE AND ORDERED in Chambers at Ocala, Marion County, Florida, on this 6th day of July, 1987.